**Robert S. CREAMER, et al., Plaintiffs,**

v.

**Richard B. DANKS, Defendant.**

**Civ. No. 87–0155 P.**

United States District Court,
D. Maine.

March 8, 1988.

Edward R. Benjamin, Jonathan S. Piper, Preti, Flaherty, Beliveau & Pachios, Portland, Me., for plaintiffs.

Jeffrey M. White, Lawrence S. Delaney, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., for defendant.

## ORDER AND
## MEMORANDUM OPINION [1]

**D. BROCK HORNBY, United States Magistrate.**

This action arose out of comments made by a judgment creditor at a disclosure hearing held in state court for the purpose of collecting a $220 debt for professional services. The plaintiffs, a municipal police officer and his wife, former clients of the defendant, a certified clinical social worker, allege that the defendant's comments in court regarding the plaintiff's mental condition constituted slander (Count I), invasion of privacy (Count II), intentional infliction of mental distress (Count III) and professional negligence (Count IV), and resulted in loss of consortium (Count V). The defendant has moved for summary judgment, arguing that he is protected by the absolute privilege which attaches to statements made during judicial proceedings. Because I find that the allegedly offensive comments were relevant to the subject matter of the disclosure hearing and therefore protected under the judicial proceedings privilege, I conclude that summary judgment should be entered for the defendant.

Under Fed.R.Civ.P. 56, a movant is entitled to summary judgment if he can show the absence of any genuine issue of material fact. The parties have each submitted statements of material fact with supporting affidavits. Although the court must indulge all factual inferences in favor of the non-moving party, under Local Rule 19(b), "all material facts set forth ... by the moving party, if supported by appropriate record citation, will be deemed to be admitted unless properly controverted ... by the opposing party."

It is uncontested that the plaintiffs sought out the services of the defendant, a certified clinical social worker, for marriage counseling, but that the relationship ended after only four evaluative sessions. The defendant eventually initiated a small claims action for payment of his professional fees and as a result the parties reached a mediated settlement in which the plaintiffs agreed to pay $220 at the rate of $10 per month. Robert Creamer Affidavit ¶ 3, Defendant's Statement of Material Facts ¶ 3. After a subsequent dispute over payment, the defendant requested a disclosure hearing to determine the plaintiffs' assets and ability to pay. Each party appeared *pro se.* During the hearing, which was conducted in open court, the question of medical insurance coverage arose;[2] subsequently, the defendant revealed that he had diagnosed the plaintiff Robert Creamer as suffering from depression. *See* Defendant's Statement of Material Facts ¶¶ 10–12; Plaintiffs' Statement of Material Facts ¶¶ 7–8.

The parties disagree in part on the manner in which the defendant revealed his diagnosis of the plaintiff Robert Creamer's depression. The plaintiffs have not controverted the defendant's statement that the comment arose in the context of an attempt to determine whether the plaintiffs' medical insurance would cover the debt, Defendant's Statement of Material Facts ¶ 10, *see* n. 2, *supra,* and that assertion is therefore deemed admitted. Local Rule 19(b). Otherwise, indulging all inferences favorably to the plaintiffs, I accept, for purposes of this motion, Robert Creamer's statement that "[w]hile testifying as to his family's financial difficulties, which led to his inability to make timely payments to Dr. Danks, [he] was suddenly confronted by questioning from [the defendant] regarding the fact

---

1. Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the United States Magistrate conduct all proceedings in this case, including the trial, and to order the entry of judgment.

2. At ¶ 10 of his Statement of Material Facts, the defendant states:
"During the course of the disclosure hearing, Danks indicated to Judge Gaulin that Creamer's

medical insurance might have covered Danks' fee, but that Creamer had never submitted the appropriate forms to Danks' office." The plaintiffs do not controvert this statement, although they do deny that Robert Creamer accused the defendant of trying to defraud Creamer's insurance company. Plaintiffs' Statement of Material Facts ¶¶ 6, 7. *See* discussion, *infra.*

that he had diagnosed plaintiff ... as suffering from serious mental illness and depression.... At no time prior to [this] disclosure did plaintiff Robert Creamer accuse [the defendant] in open court, of attempting to defraud plaintiff's insurance company by filing false reports that he was treating plaintiff Robert Creamer for depression rather than marital counselling." Plaintiffs' Statement of Material Facts ¶ 7.

The defendant argues that his disclosure of his diagnosis of Robert Creamer's depression is absolutely protected under the judicial proceedings privilege because it was related to both the initial small claims proceeding and the disclosure hearing itself, and that this absolute privilege bars the plaintiffs' action. The specific issues,[3] therefore, involve the nature and scope of the judicial proceedings privilege and the applicability of that privilege to these facts. Since this is a diversity action, state law applies. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The judicial proceedings privilege reflects public policy regarding the importance and necessity of the free flow of information during such proceedings. Although no case in Maine has explicitly discussed the issue as it relates to parties, Maine has long recognized the privilege as to witnesses in court proceedings. *Barnes v. McCrate,* 32 Me. 442 (1851) (a witness who testified in response to questioning that he feared the plaintiff would set his warehouse on fire was immune from liability for slander); *Garing v. Fraser,* 76 Me. 37 (1884) (a witness who offered false and perjured testimony was immune from civil liability because the testimony arose during a judicial proceeding and was pertinent to the subject of inquiry); *Dunbar v. Greenlaw,* 152 Me. 270, 128 A.2d 218 (1956) (a physician's certification that the plaintiff was insane, offered during an insanity commitment proceeding, was relevant and absolutely privileged even if the diagnosis of insanity amounted to malpractice).

More recently the Maine Supreme Judicial Court has extended this absolute privilege to attorneys. In *Dineen v. Daughan,* 381 A.2d 663 (Me.1978), one attorney alleged that an opposing attorney had made libelous statements about him in a written motion. The court found the statements privileged, stating that "[j]ust as a witness needs the freedom to be able to answer questions posed, ... an attorney must be free to assert relevant statements to pursue fully the interests of his client." *Dineen* at 664-65. The court emphasized that "the purpose of the privilege is to allow the attorney to litigate strenuously the interests of his client." *Id.*

The reasoning of *Dineen* clearly contemplates application of the privilege to parties who act as their own attorneys in a judicial proceeding. Since an attorney represents the interests of a client and speaks for the client, a party's privilege to speak freely in the context of judicial proceedings must be at least as extensive as that of an attorney in the context of a motion. In addition, the *Restatement (Second) of Torts* § 587 (1977) states unequivocally that "a party to a private litigation ... is absolutely privileged to publish defamatory matter concerning another ... during the course of a judicial proceeding in which he participates, if the matter has some relation to the proceeding."

*Dineen* also provides applicable guidelines to test the relevance of the defendant's statements during the disclosure hearing. There, the court carefully examined the context of the allegedly libelous statements to determine whether they were relevant to the pending judicial proceeding, which was an action to recover an alleged debt. The defendant had filed a motion for

---

**3.** The defendant has moved to strike under Fed. R.Civ.P. 12(f) certain portions of the affidavits submitted by the plaintiffs because they either lack a proper foundation or offer a legal conclusion. In this district, Fed.R.Civ.P. 12(f) has been construed literally and applied only to pleadings and not affidavits. *United States v. H & S Realty,* 647 F.Supp. 1415, 1418 (D.Me.1986), citing 10A Wright, Miller & Kane *Federal Practice and Procedure* § 2722 (1969). This motion is therefore *DENIED* as inappropriate under Fed.R.Civ.P. 12(f). Nevertheless, in deciding the merits of the summary judgment motion, the court is restricted to those portions of an affidavit which meet the requirements of Rule 56(e).

the return of improperly attached goods, challenging not the validity but the method of the attachment. In this motion the defendant had alleged that the plaintiff, acting as counsel to a creditor in the underlying action, had threatened the defendant's client and had made certain unauthorized representations.

The *Dineen* court found first that there was "a sufficient nexus" between the motion and the pending judicial proceeding because the motion, while not speaking directly to the alleged debt, was "the direct result of proceedings (i.e., the attachment) related to the existing cause of action." *Dineen* at 665. The court then concluded that the allegedly libelous statements were relevant to the motion since they were factual assertions regarding the method of possession, which was the subject matter of the motion. *Id.*

The holding in *Dineen* is supported by Restatement principles [4] which recognize a broad standard of relevance; "it is not necessary that the defamatory matter be relevant or material to any issue before the court [but only] that it have some reference to the subject of inquiry." *Restatement (Second) of Torts* § 587 (1977).

The questions in this case are, first, whether the issue of insurance coverage has the necessary relationship to the subject of inquiry, and second, whether the diagnosis of depression is sufficiently related to the issue of insurance coverage.

Here, the plaintiffs and the defendant agree that the initial small claims hearing resulted in an order, reflecting a settlement agreement, that required the plaintiffs to pay $220 in $10 per month installments. *See* Defendant's Statement of Material Facts ¶ 4; Defendant's Affidavit ¶ 4; Plaintiffs' Statement of Material Facts ¶ 3. The Order, dated November 21, 1986, also states that if the plaintiff Angela Creamer begins work the plaintiffs will pay $20 per month, and that if Robert Creamer receives payment of an unidentified $1,500 debt owed him, the plaintiffs will pay the balance in full. *See* Disclosure Hearing Order, February, 1987. The conditional requirement that the plaintiffs pay the balance in full indicates that the plaintiffs' ability to pay the entire amount, not just the monthly installment amount, was within the scope of the disclosure hearing. Both the plaintiffs and the defendant understood that the purpose of the disclosure hearing was to determine what assets were available to the plaintiffs to satisfy the judgment debt against them. Plaintiffs' Statement of Material Facts ¶ 6; Robert Creamer Affidavit ¶ 5; Defendant's Affidavit ¶ 7. The disclosure hearing was thus related to the prior small claims action, at least to the same degree that the motion for return of improperly attached goods in *Dineen* was related to the underlying action on an alleged debt.

The second step under the *Dineen* analysis of relevance is an inquiry into the actual relationship between the statements and the subject of the disclosure hearing. The plaintiffs have not controverted the defendant's assertion that immediately prior to the controversial remarks regarding the defendant's treatment of the plaintiffs, the defendant had "indicated to [the judge] that [the plaintiff Robert Creamer's] medical insurance might have covered Danks' fees, but that Creamer had never submitted the appropriate forms to Danks' office." Defendant's Statement of Material Facts ¶ 10, Defendant's Affidavit ¶ 7. It is clear that available insurance benefits would be an asset within the scope of the disclosure hearing, directly related to the plaintiffs' ability to pay either $10 per month or the $220 in full. After the issue of insurance coverage surfaced, "the plaintiff ... was suddenly confronted by questioning from Dr. Danks regarding the fact that he had diagnosed plaintiff ... as suffering from serious mental illness and depression." Plaintiffs' Statement of Material Facts ¶ 7. The defendant has asserted that medical insurance does not cover marital counseling but may cover the treatment of an underlying pyschological problem such as depression. Defendant's State-

---

**4.** The Maine Law Court applies Restatement principles in slander actions which raise the question of privileges. *See Saunders v. Van Pelt,* 497 A.2d 1121, 1125–26 (Me.1985).

ment of Material Facts ¶ 15; Defendant's Affidavit ¶ 11. The plaintiff has not controverted this assertion.[5]

I find, therefore, that the diagnosis of depression, and its disclosure, had at least "some reference to the subject of inquiry," *Restatement (Second) of Torts, supra.* Moreover, public policy considerations argue for a broad interpretation of relevance in evaluating comments made during the course of a judicial proceeding, especially in the context of small claims and disclosure hearings where parties appear *pro se* and the rules are designed "to serve the just, speedy, and inexpensive determination of every action in a simple and informal way." M.R.S.C.P. 1. The defendant's comments regarding the plaintiff's depression were therefore sufficiently relevant to the subject of the disclosure hearing to come under the broad protection of the judicial proceedings privilege.[6]

The plaintiffs argue, however, that even if the defendant's comments are privileged, the court must weigh a competing privilege authorized under Me.R.Evid. 503(b), "Physician and Psychotherapist–Patient Privilege," which states that

A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition, including alcohol or drug addiction, among himself, his physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.[7]

The plaintiffs' reliance on an evidentiary rule, however, is misplaced. Rules of evidence control the kind of information available to a judicial decision maker in resolving disputes, but they do not in themselves provide a basis for assessing tort liability. The question thus is whether any claim of a physician-patient privilege under statute or common law can outweigh the judicial proceedings privilege.

Even in the absence of the judicial proceedings defense, the plaintiffs would have to show that Maine recognizes a cause of action for breach of a physician's or psychotherapist's duty of confidentiality, that a social worker is subject to the same duty, and that this defendant breached that duty. The parties here cited no Maine cases recognizing such a cause of action. There is no physician-patient privilege at common law in Maine. *State v. Lewisohn,* 379 A.2d 1192, 1211 (Me.1977). Statutory evidentiary privileges applicable to psychiatrists, psychologists and psychological examiners were repealed in 1977 at the time of the adoption of Me.R.Evid. 503. *See* 32 M.R.S.A. § 3815; 16 M.R.S.A. § 60; *State v. Moody,* 486 A.2d 122, 124, n. 5 (Me.1984).

It is true that Me. Rule Evid. 503 at least implicitly recognizes that information acquired in the context of the doctor-patient relationship is often confidential and warrants protection from disclosure in the judicial context. Without more, however, this evidentiary rule does not establish that Maine recognizes a tort remedy for breach of that confidentiality, *see Logan v. District of Columbia,* 447 F.Supp. 1328 (D.C. 1978).[8] Certainly, it is insufficient to out-

---

**5.** *See also* Complaint ¶ 10, in which the plaintiffs state that the defendant had advised that medical insurance would probably not cover marital counseling and that he would therefore submit bills for "mental stress."

**6.** "The plaintiffs cite *Vahlsing v. Stanley,* 487 A.2d 264 (Me.1985), to support their argument that the defendant's statements were irrelevant and outside the scope of the privilege. In *Vahlsing,* however, the plaintiff alleged that the defendant had distributed false statements *outside* the context of the court proceeding.

**7.** Although generally the rules of evidence do not apply to small claims proceedings, M.R.S.C.

P. 6(b) seems to make an exception for the rules respecting privileges: "The rules of evidence, other than those with respect to privileges, shall not apply." *But see* 14 M.R.S.A. § 7484(2), which states simply that "the rules of evidence shall not apply at the hearing...."

**8.** Massachusetts has recently recognized an action based on a physician's breach of confidentiality. In *Alberts v. Devine,* 395 Mass. 59, 479 N.E.2d 113 (1985), the Massachusetts Supreme Judicial Court stated that "in this Commonwealth all physicians owe their patients a duty, for violation of which the law provides a remedy, not to disclose without the patient's consent

weigh the policies Maine has recognized in granting absolute immunity for statements made in a judicial proceeding. Consequently, I conclude that the judicial proceedings privilege gives the defendant full protection.

Accordingly, I find that the defendant has succeeded in establishing the absence of any genuine issue of material fact regarding the applicability of the judicial proceedings privilege to comments made by the defendant during the disclosure hearing. It is hereby ORDERED that the defendant's motion for summary judgment be GRANTED.

medical information about that patient, except to meet a serious danger to the patient or to others. . . . This duty arises from the physician-patient relationship." *Alberts* 479 N.E.2d at 119–20. Recognition of the privilege was based in part on the Massachusetts statute creating a testimonial privilege. The First Circuit has discussed this issue as it relates to a conflict between the confidentiality of the doctor-patient relationship, and the interest of the patient's employer in obtaining medical information regarding his employee, resolving the conflict in favor of the former. *Bratt v. IBM*, 785 F.2d 352, 361 (1st Cir.1986) (Mass.). New York also recognizes the breach of physician-patient confidentiality as an actionable tort. *See MacDonald v. Clinger*, 84 A.D.2d 482, 446 N.Y.S.2d 801 (1982).