**Robin LaPLANTE, Plaintiff,**

v.

**UNITED PARCEL SERVICE, INC., Defendant.**

**Civ. No. 92–316–P–H.**

United States District Court, D. Maine.

Jan. 20, 1993.

**20**

Gabriel O. Dumont, Jr., John D. Burke, Law Offices of Gabriel Dumont, Boston, MA, William R. Laney, Skowhegan, ME, for plaintiff.

James N. Boudreau, Sharon R. Burger, Nutter, McClennen & Fish, Boston, MA, James R. Erwin, Peter H. Jacobs, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, ME, for defendant.

1. LaPlante actually labelled her causes of action A through E, but I will call them I through V.

2. By compensatory damages I do not mean loss of wages, bonuses and benefits that have always been available under Title VII. Instead, I am

## MEMORANDUM AND ORDER

HORNBY, District Judge.

Robin LaPlante has sued United Parcel Service, Inc., ("UPS") for sex discrimination, harassment and constructive discharge. She seeks relief under Title VII of the Civil Rights Act of 1964 (Count I),[1] the Maine Human Rights Act (Count II), the Maine Civil Rights Act (Count V) and common law claims of negligent and intentional infliction of emotional distress (Counts III and IV respectively). UPS has moved to dismiss various parts of the Complaint. In response, LaPlante seeks to amend her Complaint. The motion to amend is GRANTED. UPS's motion to dismiss is GRANTED IN PART as follows.

### COUNT I—TITLE VII

■ In the first count of her Complaint, LaPlante seeks compensatory damages, punitive damages, costs and attorney fees under Title VII. The claim for compensatory[2] and punitive damages is DISMISSED. In *Letourneau v. Casa Mia, Inc.*, 804 F.Supp. 389 (D.Me.1992), I ruled that the compensatory and punitive damages added to the statute by the Civil Rights Act of 1991 were not available for conduct occurring before the effective date of November 21, 1991. All of UPS's objectionable conduct, except for one matter I am about to discuss, occurred no later than October, 1990.

■ The one UPS action that, according to LaPlante, brings her case within the 1991 amendment is UPS's response to the Maine Human Rights Commission's investigator's report. Under the procedural regulations adopted pursuant to 5 M.R.S.A. § 4566(7), UPS had the right to make a response to the Commission investigator's report before the Commission decided whether there was probable cause to believe that prohibited conduct had occurred.

using the term in its more specialized sense as referring to other kinds of damages that were made available by the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

LaPlante maintains that statements made in the UPS response, which was drafted and signed by UPS's lawyer, made it clear that UPS was continuing in its sexually objectionable attitudes. This response was apparently the final straw for LaPlante. Until then she had maintained her employment relationship with UPS while refusing to return to work, but she finally gave up at this point and ended the relationship thereby, in her view, becoming constructively discharged.

Although the UPS response to the investigator's report occurred after the effective date of the Civil Rights Act of 1991, I am satisfied that it was absolutely privileged and cannot be used to subject UPS to liability. I find this conclusion supported by federal case law and basic principles of common law that provide immunity for parties and witnesses for their testimony in judicial proceedings. In *Briscoe v. LaHue*, 460 U.S. 325, 330–34, 103 S.Ct. 1108, 1113–15, 75 L.Ed.2d 96 (1983), the United States Supreme Court held that the absolute immunity for a witness's trial testimony at common law was not abrogated by 42 U.S.C. § 1983. In doing so, the Court set forth approvingly the policy rationale for providing such immunity to parties and witnesses for their testimony in judicial proceedings. In *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 932 (1st Cir.1983), the First Circuit recognized a similar immunity for a responsive pleading filed with the National Railroad Adjustment Board "as the writing of an attorney during the course of an adjudicatory proceeding." Although the probable cause determination of the Maine Human Rights Commission is not quite an "adjudicatory proceeding" since it is only a preliminary finding, it is nevertheless based upon the Commission's assessment of its investigator's report, the statements of the person who has brought the charge and the response of the employer to the investigator's report. All the policies for recognizing witness immunity in *Briscoe* and a lawyer's response to the NRAB in *Stepanischen* apply equally to the lawyer's response here to the Maine Human Rights Commission investigator.

The Maine Human Rights Commission is established by statute. Among its other duties, it acts in a quasi-adjudicatory capacity when it determines whether probable cause exists to believe that unlawful discrimination has occurred. The response in question was a written document submitted by a lawyer as part of the proceedings contemplated by the statute and the Commission's own rules.[3] Just as in a judicial proceeding, it is important that parties, witnesses and lawyers be free to speak forthrightly in litigating their case before the Commission and not fear collateral consequences of other lawsuits. *See also Restatement (Second) of Torts*, § 585–88 (1977).[4]

I leave open the question whether LaPlante can make out a claim for constructive discharge once reference to the 1991 response is deleted. That is a question for the factfinder. It is true that LaPlante did not completely sever her relationship with UPS until February, 1992. She did, howev-

---

**3.** In this case, after LaPlante filed her complaint with the Maine Human Rights Commission, a representative of the Commission conducted an investigation which included taking the testimony or statements of any person who might provide a source of evidence to be used by the Commission in reaching its final decision on the claim. Procedural Rule 2.05 A, B. After completing the investigation, the investigator filed a report of the investigation with recommendations for a decision on the complaint. Procedural Rule 2.05 F. Both parties then had time to respond in writing to the Commission setting forth specific items of disagreement with the report and/or the investigator's recommendation. Procedural rule 2.05 G.

**4.** In *Creamer v. Danks*, 700 F.Supp. 1169 (D.Me.), *aff'd* 863 F.2d 1037 (1st Cir.1988), I explored the scope of Maine's judicial proceedings privilege and the policy supporting it. The Maine Law Court had previously recognized an absolute privilege for witness statements in judicial proceedings and in pleadings filed by lawyers. In *Creamer*, I ruled that the same policies compelled its application to statements made by the parties themselves while acting in a *pro se* capacity and that the privilege applied so long as the statements were "relevant." Here, there is no question that UPS's response to the investigator's report was relevant. Although the statements UPS's lawyer made may well have offended LaPlante, they were completely relevant to the legal position UPS was taking on the issue.

er, refuse to return to work in October, 1990, because of the sexual discrimination and harassment she alleges. There is no suggestion on this record that she was paid during any of that time or that she accomplished anything other than to retain her union seniority. The brief statement in *Smith v. Bath Iron Works Corp.*, 943 F.2d 164, 166–67 (1st Cir.1991), that an employee must "leave" her employer within a reasonable time after objectionable conduct does not resolve the question here. That is a matter that must be left to trial.

Accordingly, UPS's motion to dismiss Count I's claims for compensatory and punitive damages is GRANTED, but in all other respects the motion is DENIED as to Count I.

### COUNT II—MAINE HUMAN RIGHTS ACT

■ In Count II, LaPlante requests "compensatory damages ... for her loss of wages, bonuses and benefits...." UPS has moved to dismiss the claim for compensatory damages under the Maine Human Rights Act. It is apparent under that statute that her remedies are limited to reinstatement with or without back pay, 5 M.R.S.A. § 4613, and fringe benefits. *See King v. Bangor Fed. Credit Union*, 568 A.2d 507, 508 n. 3 (Me.1989); *Rozanski v. A–P–A Transport, Inc.*, 512 A.2d 335, 341–43 (Me.1986). Compensatory damages for pain and suffering and punitive damages, on the other hand, are not available. *Harris v. International Paper Co.*, 765 F.Supp. 1509, 1525 (D.Me.1991). It is not entirely clear whether LaPlante is seeking only wages, bonuses and benefits or compensatory damages in a broader form (*see* n. 2, *supra*) but I choose to read her complaint most broadly since she does apparently seek the broader form of damages under Count I. Accordingly, UPS's motion to dismiss the claim for compensatory damages is GRANTED to the extent it seeks more

than reinstatement, back pay, bonuses and fringe benefits.

### COUNTS III AND IV—NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

LaPlante's original complaint sought recovery for negligent and intentional infliction of emotional distress based exclusively on conduct by UPS employees while she was still actively employed with the company. UPS moved to dismiss the claims, arguing that the Maine Workers' Compensation Act, 39 M.R.S.A. § 28–A, bars any such claims. LaPlante has not disputed UPS's argument on this score, but instead maintains that her amended complaint adding the objectionable conduct in UPS's response to the Maine Human Rights Commission's investigator did *not* arise in the course of her employment and therefore is not precluded by the Maine Workers' Compensation Act. *See Comeau v. Maine Coastal Serv.*, 449 A.2d 362, 365 (Me.1982). Because I have ruled that the UPS response is absolutely privileged,[5] however, UPS's motion to dismiss Counts III and IV is GRANTED.

### COUNT V—MAINE CIVIL RIGHTS ACT

[4] LaPlante's final claim for relief is under the Maine Civil Rights Act, a statute enacted in 1989. The Act is patterned after the federal civil rights statute, 42 U.S.C. § 1983, to provide a general remedy for violation of federal and state constitutional and statutory rights. The Law Court has held that it creates no new rights but provides only a remedy for rights created by some other law. *Phelps v. President & Trustees of Colby College*, 595 A.2d 403, 406 (Me.1991).[6] The only statutory rights upon which LaPlante can base her claim for relief are Title VII and the Maine Human Rights Act. Unfortunately for LaPlante, each of these statutes sets forth in

---

**5.** I conclude that, if confronted with the issue, the Law Court would apply the privilege to the regular proceedings that take place before a state-created administrative agency for the reasons I have stated under Count I.

**6.** In response to this decision, the Maine Legislature passed an amendment to the Act on March 24, 1992. This amendment, however,

does not alter my reasoning for this opinion. The amendment narrows the Act's coverage to interference with rights protected by the state or federal constitutions or applicable laws by physical force or violence or threat of such force or violence and broadens it to include actions by private parties. There is no basis for finding it retroactive, however.

very specific terms the remedies that are available when a violation of their respective terms occurs. As a matter of the supremacy of federal law, the Maine Civil Rights Act could not supplant the remedies provided in Title VII. As a matter of legislative purpose, I see no basis for concluding that the Maine Legislature intended to supplant its carefully detailed remedial procedures in the Maine Human Rights Act by enacting the Maine Civil Rights Act. Instead, the Maine Civil Rights Act is clearly a statute designed to provide relief when none is otherwise available. Here, La-Plante has a specific set of remedies available to her under the Maine Human Rights Act. As a result, I conclude that she is not entitled to separate relief under the Maine Civil Rights Act.[7] Accordingly, UPS's motion to dismiss Count V is GRANTED.

So ORDERED.

7. Federal courts have generally reached this same conclusion in comparing the general relief available under Section 1983 to the particular relief available under Title VII. See, e.g., Day v. Wayne County Bd. of Auditors, 749 F.2d 1199, 1202 (6th Cir.1984); Izquierdo Prieto v. Mercado Rosa, 894 F.2d 467, 469–70 (1st Cir.1990). Although these courts have acknowledged that a plaintiff can bring a Section 1983 claim along with a Title VII claim when the 1983 claim is based on a protected right *other than* that created by Title VII, this is not such a case. Here, the only rights that the Maine Civil Rights Act could enforce are those created by either Title VII or the Maine Human Rights Act.