2004 ME 1

**Vance GINN**

v.

**KELLEY PONTIAC–MAZDA, INC.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 25, 2003.

Decided: Jan. 6, 2004.

Arthur J. Greif, Esq., Gilbert & Greif, P.A., Bangor, for plaintiff.

Stephen E.F. Langsdorf, Esq., Matthew J. LaMourie, Esq., Preti Flaherty Beliveau Pachios & Haley, LLC, Augusta, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Kelley Pontiac–Mazda, Inc., appeals from a judgment entered by the Superior Court (Penobscot County, *Hjelm, J.*) in favor of Vance Ginn on Ginn's complaint alleging unlawful employment discrimination in violation of the Maine Whistleblowers' Protection Act, 26 M.R.S.A. §§ 831–840 (1988 & Supp.2003). Kelley argues that the court (1) abused its discretion by including the value of Ginn's use of an employer-provided vehicle to commute to and from work in the calculation of its award of back pay, and (2) erred in concluding that Kelley failed to establish that Ginn did not mitigate his damages. We discern no error with respect to the issue of mitigation, but conclude that the value of the use of the vehicle should not have been included in the back pay award, and modify the judgment accordingly.

## I. BACKGROUND

[¶ 2] Kelley, an automobile dealer located in Bangor, employed Ginn as a salaried used car sales manager. Ginn was permitted to use a company-owned vehicle to commute to and from work each day. In 1998 and 1999, Ginn made several complaints regarding the company's practice of selling used cars without first inspecting them. In response, Kelley eliminated Ginn's sales manager position and offered him a new job washing cars for an hourly wage. Ginn's use of the company car to travel to and from work was terminated

immediately. Ginn declined the offer to wash cars and subsequently filed suit, claiming that Kelley constructively discharged him in response to his complaints in violation of section 833(1)(B) of the Maine Whistleblowers' Protection Act, 26 M.R.S.A. § 833(1)(B) (1988), current version at 26 M.R.S.A. § 833(1)(B) (Supp. 2003).

[¶ 3] Following a two-day trial, the jury found that Kelley engaged in unlawful employment discrimination against Ginn and awarded him $62,400 in compensatory damages and $75,000 in punitive damages. The court reduced the jury verdict to $50,000, the maximum amount for compensatory and punitive damages permitted by 5 M.R.S.A. § 4613(2)(B)(8)(e)(i) (2002).[1] In addition, after a post-trial, jury-waived testimonial hearing, the court awarded Ginn back pay of $56,825,[2] bringing the total damages award to $106,825, as well as attorney fees, interest and costs.

[¶ 4] The court determined that at the time of the adverse employment action, Ginn's gross weekly pay was $500, consisting of his salary of $350 and the value of his use of the company car. The court valued the car benefit at $150 per week based on Ginn's testimony that his average weekly commute was 550 miles. The court also concluded that Kelley failed to meet its burden of proof that Ginn did not mitigate damages.

[¶ 5] Following the Superior Court's denial of Kelley's motion to amend the judgment, Kelley filed this appeal.

---

**1.** Complaints under the Whistleblowers' Protection Act may be brought before the Maine Human Rights Commission and the Superior Court. 26 M.R.S.A. § 834–A (1988); 5 M.R.S.A. §§ 4612, 4613 (2002).

**2.** The Superior Court calculated back pay for a period of 151 weeks by $500 per week and reduced that amount by $18,675 based on income Ginn earned from his wife's craft business and his car detailing work. *See Me. Human Rights Comm'n v. Dep't of Corr.,* 474 A.2d 860, 869 (Me.1984).

## II. DISCUSSION

[¶ 6] "We will uphold an award of back pay under the Maine Human Rights Act 'absent clear error by the grant of the award or an abuse of discretion in the amount awarded.'" *Kopenga v. Davric Me. Corp.*, 1999 ME 65, ¶ 11, 727 A.2d 906, 908–09 (quoting *LeBlond v. Sentinel Serv.*, 635 A.2d 943, 945 (Me.1993)). No abuse of discretion occurs when the court "awards back pay in amounts designed to make the employee whole and not to penalize the employer." *Id.* ¶ 11, 727 A.2d at 909 (internal quotation marks omitted).

### A. The Inclusion of the Value of the use of a Company Car in the Back Pay Award

[¶ 7] The award of back pay is an equitable remedy under the Maine Human Rights Act, and the determination of its amount is left to the trial court and not the jury.[3] *See* 5 M.R.S.A. § 4613(2)(B)(2) (2002). The purpose of back pay is to make the plaintiff "whole" and restore the plaintiff to a position where he or she would have been if not for the unlawful discrimination. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 422, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). A back pay award may include the value of fringe benefits. *Rozanski v. A–P–A Transport, Inc.*, 512 A.2d 335, 342–43 (Me.1986); *LaPlante v. United Parcel Serv., Inc.*, 810 F.Supp. 19, 22 (D.Me.1993).

[¶ 8] Kelley argues that the Superior Court abused its discretion when it included $150 per week in the computation of Ginn's back pay award for Ginn's use of a company car to travel to and from work. Kelley asserts that Ginn no longer had to commute 550 miles per week after his employment ended, and the evidence otherwise established that Ginn did not need a vehicle to drive to and from work during the period for which back pay was calculated. This, Kelley asserts, precludes Ginn from arguing that the loss of the company car resulted in an actual, measurable loss.

[¶ 9] Ginn responds that because the use of the company car was a direct benefit to him, as opposed to an indirect benefit such as health insurance, its value as measured by the approximate mileage he drove to and from work each week should be viewed as part of his overall compensation. The court adopted this view, concluding that the value of the car provided by Kelley was "a component of his compensation" and should be included in Ginn's back pay award because Ginn "actually received the value of that benefit, unlike an employee who has insurance coverage but does not suffer any covered losses or expenses."

[¶ 10] Most jurisdictions that have addressed this question have concluded that the value of lost employment benefits are recoverable in employment discrimination cases only if it is established that the employee incurred out-of-pocket expenses for the same or equivalent benefits following the unlawful termination of employment. *E.g., McMillan v. Mass. Soc. for the Prevention of Cruelty to Animals*, 140 F.3d 288, 305 (1st Cir.1998) ("Lost benefits are recoverable only if the plaintiff has offered evidence of out-of-pocket expenses for the same benefits."); *but see Jacobson v. Pitman–Moore, Inc.*, 582 F.Supp. 169, 179 (D.Minn.1984) (awarding plaintiff the cost of replacement coverage even though she purchased none).

[¶ 11] In *McMillan*, the First Circuit considered whether the value of employer-provided health insurance, life insurance,

---

**3.** Neither party has raised, and we do not address, the authority of the court to award back pay pursuant to 5 M.R.S.A. § 4613(2)(B)(2) (2002), if not accompanied by an order to employ or reinstate the victim of unlawful employment discrimination.

and retirement contributions should be included in the determination of a back pay award. 140 F.3d at 305. The court concluded that in the absence of proof that the employee incurred out-of-pocket expenses in connection with the loss of the insurance benefits following the termination of the employment, "there was no competent evidence from which a reasonable jury could conclude that Dr. McMillan suffered any loss ... [and the] back pay award should be accordingly reduced by the amount of the lost benefits award." *Id.* at 305–06.

[¶ 12] Ginn asserts that in contrast with the insurance benefits considered in *McMillan,* he should not be required to demonstrate that he incurred out-of-pocket expenses resulting from his loss of the use of the company car because, as the Superior Court concluded, the actual beneficial use of the car flowed directly to him, while the benefit of employer-provided health insurance at issue in *McMillan* flowed directly to the health insurance company in the absence of a claim by the employee. This reasoning, however, overlooks the intrinsic value of having health insurance in place to insure against the risk of a future need for health care treatment, regardless of whether that need is ever realized during the policy term. Employment benefits, whether in the form of an employer-provided car or employer-provided insurance, inure to the benefit of the employee irrespective of whether a third party receives remuneration in connection with the establishment of the benefit. We are unpersuaded by Ginn's assertion that he should be excused from having to prove that he incurred out-of-pocket expenses as the result of his loss of the use of the company car in order for that lost benefit to be included in an award of back pay.

[¶ 13] Absent any evidence that Ginn incurred out-of-pocket expenses as the result of his loss of the car provided by Kelley, there was no basis to include the value of the benefit as part of the back pay award. Accordingly, the judgment must be reduced by $22,650, which represents the $150 per week value afforded this benefit multiplied by the 151–week period for which back pay was awarded.

## B. Mitigation of Damages

[¶ 14] Kelley argues that the court erred in concluding that it failed to prove the affirmative defense that Ginn did not mitigate his damages. *See Me. Human Rights Comm'n v. Dep't of Corr.,* 474 A.2d 860, 869 (Me.1984); *Me. Human Rights Comm'n v. City of Auburn,* 425 A.2d 990, 998–99 (Me.1981). Kelley cites to the court's order on its motion to amend judgment in which the court referenced the testimony of witness Betsy Quirk to the effect that another auto dealer in Bangor had openings for auto reconditioners that paid either $10 or $7 per hour depending on one's experience, or an unspecified flat rate or fee. The court concluded that Kelley failed to meet its burden of proof on this issue: "[B]ecause of the possibility that the plaintiff's compensation would have derived from the flat rate, and because it is impossible from this record to determine the amount of that income ..., then the amount of any offset against the defendant's liability for gross backpay would rest on speculation."

[¶ 15] Kelley has provided on appeal only a partial transcript of the jury trial and no transcript of the back pay hearing, including the testimony of Betsy Quirk. As the appellant, Kelley has the burden of providing a "sufficient record that allows adequate consideration of [its] arguments." *Tenney v. Benson,* 1999 ME 177, ¶ 1, 741 A.2d 454, 455. The appellate record does not permit us to review the court's conclusion that it was not possible from the evidence before it to determine the

amount of income Ginn could have earned in mitigation. *See* M.R.App. P. 5(b)(2)(A) (stating that appeals based on insufficient evidence "shall include in the record a transcript of all evidence relevant to such finding or conclusion").

The entry is:

The judgment in the amount of $106,825 is reduced by $22,650 to $84,175, and, as modified, is affirmed. Remanded to the Superior Court for entry of a judgment in accordance with this opinion.