STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-03-202
DWM - KEN - 2/

DANIELLE HARTIGAN,

Plaintiff

v.

**DECISION AND ORDER**

HALL-DALE MANOR,

Defendant

FEB 2005

This matter is before the court on Defendant's motion for summary judgment pursuant to M.R. Civ. P. 56.

The present complaint involves claims of retaliation in violation of the Maine Whistleblower Protection Act (hereinafter "the WPA" or "the Act"), 26 M.R.S.A. § 831 et seq., (count I) as well as common law defamation (count II). Plaintiff Danielle Hartigan (hereinafter "Plaintiff" or "Hartigan") was employed by Defendant Hall-Dale Manor d/b/a North Country Residential Care Associates (NCRCA) and North Country Residential Care, Inc. (hereinafter "Defendant" or "Hall-Dale Manor") between March and August of 2001. Hall-Dale Manor is a residential care facility for disabled adults located in Farmingdale, Maine. Hartigan was hired to work at Hall-Dale Manor as the activities director. In this capacity, Hartigan was responsible for arranging activities for residents both on and off-site. Additionally, the Plaintiff was responsible for overseeing the safety of residents while engaged in these activities.

On or about July 29, 2001, Hartigan attended a resident counsel meeting. As the activities director, the Plaintiff was the only staff member permitted to attend these meetings. During the July 29th meeting, the Plaintiff heard the residents in attendance discuss various concerns relative to living conditions at Hall-Dale Manor. A day or so

after the meeting, Hartigan provided a summary of these concerns to her supervisor. The Plaintiff claims that she informed her supervisor, as well as the head administrator, that she could "go to the state" with these issues if they were not properly addressed.

Chad Cloutier (hereinafter "Cloutier") was hired by NCRCA to serve as a part-time consultant beginning on August 6, 2001. Cloutier is the stepson of Bernard Davis (hereinafter "Davis"), the general partner of NCRCA. Prior to August 6, 2001, Cloutier had no interest, involvement, or responsibility in the operation of Hall-Dale Manor. On or about August 5, 2001, Davis told Cloutier that he had received a report that there had been breaches of confidentiality with respect to residents of Hall-Dale Manor by Hall-Dale Manor employees. In addition, Davis told Cloutier that he had also received information that a resident of Hall-Dale Manor had fallen and hit her head on a post while on an outing. An internal investigation ensued, resulting in the termination of Hartigan, as well as several other Hall-Dale Manor employees. Cloutier concluded from his investigation that Hartigan had failed to supervise residents and had also violated company policy by discussing confidential information about Hall-Dale Manor residents with employees of Walter's Boarding Home, where she also worked part-time. Contrarily, Hartigan claims that Davis directed Cloutier to fire her and that his investigation was essentially a sham. The Plaintiff contends that she was really fired because she had threatened to address concerns regarding residents' rights with the State. Also, she claims that Davis was fearful of having the facility shut down because it was operating under a conditional license.

Following her termination, the Plaintiff filed a complaint with the Maine Human Rights Commission. The Commission's investigator determined that there were no reasonable grounds to conclude that Hall-Dale Manor had violated the WPA when it fired Hartigan.

The Law Court has explained that:

> Summary judgment is no longer an extreme remedy. It is simply a procedural device for obtaining judicial resolution of those matters that may be decided without fact-finding. Summary judgment is properly granted if the facts are not in dispute or, if the defendant has moved for summary judgment, the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law.

*Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22. Summary judgment is proper if the citations to the record found in the parties' Rule 56(h) statements demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Dickinson v. Clark*, 2001 ME 49, ¶ 4, 767 A.2d 303, 305. "A fact is material if it has the potential to affect the outcome of the case under governing law." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, n.3, 770 A.2d 653, 655, n.3 (citing *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575). "The invocation of the summary judgment procedure does not permit the court to decide an issue of fact, but only to determine whether a genuine issue of fact exists. The Court cannot decide an issue of fact no matter how improbable seem the opposing party's chances of prevailing at trial." *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 6, 695 A.2d 1206, 1209 (quoting *Tallwood Land & Dev. Co. v. Botka*, 352 A.2d 753, 755 (Me. 1976)). To avoid a judgment as a matter of law for a defendant, a plaintiff must establish a prima facie case for each element of her cause of action. *See Fleming v. Gardner*, 658 A.2d 1074, 1076 (Me. 1995).

The Defendant argues that it is entitled to summary judgment on count I of the complaint because Hartigan cannot show any causal connection between her termination and what she claims was protected activity. Hall-Dale Manor first notes that the WPA prohibits employers from firing an employee who, in good faith, reports to their employer or a public body what the employee reasonably believes is a violation

of the law. *See* 26 M.R.S.A. § 833(1)(A) (2003). Further, the Defendant notes that to establish a prima facie case of retaliation, Hartigan must show (1) that she engaged in activity protected by the WPA, (2) that she was the subject of adverse employment action, and (3) that there was a causal link between the protected activity and the adverse employment action. *See Bishop v. Bell Atlantic Corp.*, 299 F.3d 53, 58 (1st Cir. 2002); *DiCentes v. Michaud*, 1998 ME 227, ¶ 14, 719 A.2d 509, 514. In analyzing claims under the WPA, Maine courts have adopted the three-part burden-shifting analysis enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See DiCentes*, 1998 ME 227, ¶ 14, 719 A.2d at 514. Hence, in this case, Hartigan must first meet the minimal burden of establishing a prima facie case. *Id.* Thereafter, the evidentiary burden shifts to Hall-Dale Manor to set forth a legitimate, non-retaliatory motive for firing her. *Id.* Finally, the burden shifts back to the Plaintiff, who must establish that the Defendant's stated reasons for the termination are pretextual, and that the real motive was in fact retaliatory. *Id.*

For the purposes of this motion, the Defendant concedes that Hartigan satisfies the low initial burden of production for establishing a prima facie case of retaliation. Further, Hall-Dale Manor asserts, and Hartigan agrees, that it has met its burden to articulate legitimate, non-discriminatory reasons for her termination. However, the Defendant contends that Hartigan cannot meet her ultimate burden of proof on the issues of pretext and retaliatory motive.

In light of these concessions, the dispositive issue regarding count I of the complaint is relatively straightforward. Particularly, if the Plaintiff has presented properly supported record facts from which a jury could reasonably conclude that the purported reasons for her termination were false or that the employer was more likely motivated by the protected activity, summary judgment is not warranted. *See Mowatt v.*

*John Murphy Homes, Inc.*, KENSC-CV-01-201 (Me. Super. Ct., Ken. Cty., May 30, 2003) (Marden, J.) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S. Ct. 2097, 2106 (2000)). Here, it appears that Hartigan has met her burden, and therefore, there remains a genuine issue of material fact for the jury.

The crux of Defendant's argument is that since the individual responsible for the termination decision, Cloutier, had no knowledge of the alleged threat to report Hall-Dale Manor to the State, or of the issues raised at the resident council meeting, or of any meetings that took place thereafter, Cloutier could not have been motivated by a retaliatory animus. However, the Plaintiff has produced properly supported record evidence that tends to show that Cloutier was aware of the alleged threat and that the stated reasons for the termination decision were in fact a pretext. Specifically, there exists evidence to suggest that Davis was aware of the threat to report Hall-Dale Manor to the State and that he was concerned that the facility would be shut down. Also, there is evidence that Davis and Cloutier were together during the week leading up to Hartigan's termination. Thus, it is possible to infer that Cloutier became aware of these facts prior to the date that the Plaintiff was fired. Based upon these facts alone, a reasonable jury could conclude that there was in fact a causal connection between the protected activity and the adverse employment action. Thus, summary judgment on count I of the complaint must be denied.

The Defendant argues that Hartigan cannot succeed on count II of the complaint because she cannot satisfy all of the elements of defamation. In particular, Hall-Dale Manor asserts that the Plaintiff cannot establish the element of publication. The Defendant notes that under Maine law, publication of defamatory matter is its communication to one other than the person defamed. *See Hill v. Town of Lubec*, 609 A.2d 699, 701-702 (Me. 1992); RESTATEMENT (SECOND) OF TORTS § 577 (1977). In this

instance, Hall-Dale Manor asserts that the only communication of the alleged defamatory statement, the termination notice, was to Hartigan herself. Hence, as a matter of law, publication cannot be proven.

The Defendant also asserts that any defamatory statements contained in submissions to the Maine Human Rights Commission are absolutely privileged. Although the Law Court has not addressed the issue of whether absolute privilege attaches to communications made during proceedings before the Commission, the Defendant notes that the United States District Court for the District of Maine has determined that such submissions are indeed privileged. *See LaPlante v. United States Parcel Service, Inc.*, 810 F.Supp. 19 (D. Me. 1993). The Defendant notes that this holding is in harmony with the Restatement position regarding an attorney's privilege to make statements concerning pending and threatened litigation. *See* RESTATEMENT (SECOND) OF TORTS § 586 cmt. a (1977). In that the Law Court has already adopted the Restatement's positions regarding defamation generally (*see, e.g, Staples v. Bangor Hydro-Electric*, 629 A.2d 601, 604 (Me. 1993), Hall-Dale Manor contends that the Court should take the logical next step and apply this rationale to submissions to the Commission.

In response, Hartigan points to record evidence that a third party, Rhonda Hamilton (hereinafter "Hamilton"), was also present when Cloutier published the statement. The Plaintiff also notes that Hamilton had no reason for being in the room at the time as she was not an employee, and that Hartigan justifiably felt that disclosure of that statement would likely result in the information being shared among other members of the health care profession.

Further, Hartigan believes that she should be allowed to proceed under the doctrine of compelled self-publication. *See Carey v. Mt. Desert Island Hospital*, 910 F.Supp. 7, 10-12 (D. Me. 1995). Hartigan claims that she has been forced to

communicate the fact of her firing to prospective employers and has had to relate the particulars of the termination notice to at least one prospective employer.

In reply, the Defendant first asserts that Hamilton was in fact an employee of NCRCA. Further, the Defendant contends that Hamilton was previously aware of the facts underlying the termination decision by virtue of having assisted in the investigation, which, Defendant claims, was consistent with her role within the organization.

In addition, the Defendant notes that even if there was a publication to Hamilton, that communication fell within the common interest privilege. Hall-Dale Manor notes that "[a] conditional privilege may arise in any situation in which an important interest of the recipient of a defamatory statement will be advanced by frank communication". *See Cole v. Chandler*, 2000 ME 104, ¶¶ 5-7, 752 A.2d 1189, 1193-94. The Defendant contends that Hamilton, as the person in charge of nursing care, already knew of the allegedly defamatory facts and had a significant interest in seeing their resolution. The Defendant also notes that the privilege may be lost where the speaker knew the statement to be false, recklessly disregarded its truth or falsity, or acted with spite or ill will. *See Id.* Hall-Dale Manor asserts that a fact-finder could not conclude, based on the record, that the privilege was lost.

Finally, Hall-Dale Manor claims that Hartigan cannot recover under the doctrine of compelled self-publication. The Defendant notes that Hartigan only told prospective employers that she had been fired, and declined to elaborate as to the reasons. Because the statement that she had been fired was true, this bars a claim of compelled self-publication as a matter of law. Further, the Defendant contends that the doctrine of compelled self-publication is not even recognized in Maine. Moreover, because the

common interest privilege would apply in this realm in any event, Hartigan cannot prevail.

Upon review of the case law, it appears that the Law Court has taken but few occasions to discuss the publication element of defamation. The Defendant has set forth no authority for its assertion that because Hamilton was already aware of the facts underlying Hartigan's termination, the transmission of those facts was not a publication. Also, it seems that the Plaintiff has properly called into question whether this communication is entitled to any privilege. In particular, Hartigan has set forth evidence that the allegations therein were false, and that Cloutier may have acted maliciously in conceiving the reasons for her termination. Hence there remains a jury issue relative to the Defendant's claim of privilege. Whether the defendant has abused its privilege is a question of fact. *Cole v. Chandler*, 752 A.2d at 1194.

As for Hartigan's claim that she was compelled to repeat the alleged defamation to prospective employers, the portions of the record cited in her brief reveal that she actually refrained from describing the particulars of these statements during job interviews. Because this necessarily means that there were no false and defamatory statements communicated to prospective employers, she cannot prove a claim of defamation as a matter of law. Hence, the issue of whether compelled self-publication is a viable doctrine under Maine law need not be addressed.

Based on the foregoing, it appears that there remain disputed issues of material fact regarding the truth of the defamatory statements contained in the termination

notice, whether those statements are privileged, and as to Cloutier's culpability. Therefore, summary judgment on count II of the complaint must be denied.[1]

For the reasons stated above, the entry will be:

Defendant's motion for summary judgment on Plaintiff's complaint is DENIED.

Dated: February _l_, 2005

Donald H. Marden
Justice, Superior Court

---

[1] Hartigan clarifies in her brief that she never intended to base a defamation claim on statements made by Defendant's attorney to the Maine Human Rights Commission. Therefore, this issue, alluded to above, required no analysis.

DANIELLE HARTIGAN  - PLAINTIFF

Attorney for: DANIELLE HARTIGAN
JOHN R LEMIEUX  - RETAINED 08/07/2003
FARRIS HESELTON LADD & BOBROWIECKI, PA
251 WATER STREET
PO BOX 120
GARDINER ME 04345-0120


vs
HALL-DALE MANOR - DEFENDANT

Attorney for: HALL-DALE MANOR
JOSEPH CLOUTIER  - RETAINED 09/16/2003
JOSEPH M CLOUTIER & ASSOCIATES
247 COMMERCIAL STREET
BOX 515-3
ROCKPORT ME 04856-5964

Attorney for: HALL-DALE MANOR
JAMES R ERWIN  - RETAINED
PIERCE ATWOOD
ONE MONUMENT SQUARE
PORTLAND ME 04101


SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-CV-2003-00202


DOCKET  RECORD


Filing Document: COMPLAINT          Minor Case Type: OTHER STATUTORY ACTIONS
Filing Date: 08/07/2003

## Docket Events:

08/07/2003 FILING DOCUMENT - COMPLAINT FILED ON 08/07/2003

08/08/2003 Party(s):  DANIELLE HARTIGAN
           ATTORNEY - RETAINED ENTERED ON 08/07/2003
           Plaintiff's Attorney: JOHN R LEMIEUX

08/08/2003 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 08/08/2003
           MAILED TO ATTY LEMIEUX.

09/10/2003 Party(s):  HALL-DALE MANOR
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 08/27/2003

09/10/2003 Party(s):  HALL-DALE MANOR
           SUMMONS/SERVICE - ACK OF RECEIPT OF SUMM/COMP SERVED ON 08/27/2003

09/16/2003 Party(s):  HALL-DALE MANOR
           RESPONSIVE PLEADING - ANSWER & COUNTERCLAIM FILED ON 09/16/2003
           Defendant's Attorney: JOSEPH CLOUTIER

09/16/2003 Party(s):  HALL-DALE MANOR
           ATTORNEY - RETAINED ENTERED ON 09/16/2003
           Defendant's Attorney: JOSEPH CLOUTIER

09/18/2003 ORDER - SCHEDULING ORDER ENTERED ON 09/18/2003
           DONALD H MARDEN , JUSTICE