MELVIN J. GOOGIN vs. CITY OF LEWISTON.

Androscoggin.    Opinion October 28, 1907.

*Municipal Corporations.  Drains and Sewers.  Law relating to Sewers in City of Lewiston.  Liability of Lewiston in relation to Sewers.  Sewer termini.  Sufficiently definite, when.  Parol evidence admissible to show termini.  Concurrent action of the two Boards of Lewiston City Council.  How same may be shown.  Board of Public Works for City of Lewiston.  Power of, relating to Sewers.  Private and Special Laws, 1864, chapter 398; 1873, chapter 387; 1903, chapter 263.  Statute, 1901, chapter 268.  R. S., chapter 21, sections 2, 18.*

1.  When the municipal authorities in the process of repairing a public sewer stop up the pipe of one who has lawfully connected with it so that it fills and bursts, the municipality is liable for the damage occasioned thereby.

2.  The power and duty to lay out, make, maintain and repair common sewers in the City of Lewiston is vested by statute in the city council.

3.  The special statute governing the construction of sewers in Lewiston does not require a petition as a prerequisite to the laying out of a sewer. The city council can act of its own motion.

4.  The city ordinance to the effect that the mayor and aldermen shall in no case proceed to construct a sewer until an appropriation therefor shall have been made by the city council is not applicable in the case of a sewer constructed by the city council itself.

5.  The similar provision in R. S., chapter 21, section 2, is not applicable in the case of a sewer constructed many years before its enactment, as was the one in question in this case.

6.  An order of the city council "that the sewer on Bates Street be continued to Walnut Street" is sufficiently definite as to the termini, one end being the point where the sewer then existing on Bates Street ended, and the other being Walnut Street.

7.  Parol evidence is admissible to locate on the face of the earth the termini which were fixed by the record, and to show that the sewer constructed under such an order is the one now complained of.

8.  Record evidence of the concurrent action of the two boards of the city council of Lewiston is essential in showing the laying out of a sewer. But

the separate record of the common council is not indispensable in showing the concurrent action of that board. When the city records, kept by the city clerk, who is also the recording officer of the board of aldermen, show that the order for the construction of a sewer was passed by the board of aldermen and "sent down," and later, that the order "came up, passed in concurrence" it is sufficient. The city clerk's record is admissible to show the concurrent action of the common council.

9.   Under chapter 263 of the Private and Special Laws of 1903, the Board of Public Works for the city of Lewiston has all the powers and is charged with all the duties relative to the construction, maintenance, care and·control of sewers in that city, which were previously conferred or imposed upon the city council.

*Held:* That the city is answerable in damages for injuries caused by the want of proper maintenance or repair of the public sewers by the Board of Public Works, the same as it would be if the city council, or any other municipal agency, was charged with the duty of their maintenance and repair.

On report. Judgment for plaintiff.

Action on the case to recover damages sustained by the plaintiff and caused by the alleged failure of the defendant city to maintain and keep in repair a certain public drain in the defendant city. (See Revised Statutes, chapter 21, section 18.) Plea, the general issue.

Tried at the January term, 1907, of the Supreme Judicial Court, Androscoggin County. At the conclusion of the testimony, and by agreement of the parties, the case was reported to the Law Court for determination upon the legally admissible evidence.

The case fully appears in the opinion.

*Newell & Skelton,* for plaintiff.

*Louis J. Brann,* for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, JJ.

SAVAGE, J.   The plaintiff complains that the defendant city failed in July, 1906, to maintain and keep in repair its public sewer on Bates Street, so as to afford sufficient and suitable flow for all drainage entitled to pass through it, in this, that in repairing a break in said sewer, and in flushing the same afterwards, the city's proper agents and servants caused the pipe leading from the cellar on plain-

tiff's premises on Bates Street to the main sewer "to be stopped, filled and plugged with gravel, earth and stones, at the connection of the pipe with the sewer," so that the water and sewage from plaintiff's premises accumulated in the pipe and burst the same, letting the sewage flow back into the cellar. And to recover for the injuries occasioned thereby he brings this suit.

We think the evidence fairly justifies the following statement of facts. Several days prior to the injuries complained of, the Bates Street sewer, which was built of brick, fell in at a point about twenty or twenty-five feet above the point where the plaintiff's pipe connected with it. After the place of the break had been cleaned out preparatory to the re-building of the sewer, or the replacement of it at that place by sewer pipe, a heavy rain fell, and stones, gravel and mud were washed down into the trench, filling it to the depth of two or three feet. Later it was found that the main sewer was partly or wholly clogged, and the city authorities sought to remove this difficulty by flushing the sewer with a powerful hydrant stream. This stream evidently forced some of the stones, gravel and mud into the plaintiff's pipe, completely plugging it for the distance of ten feet from its connection with the sewer. And the water and sewage from plaintiff's premises accumulated, burst the pipe, and did the damage complained of. It is admitted that the plaintiff had received and paid for a proper sewer permit, and had lawfully connected with the sewer.

It is provided by R. S., ch. 21, sect. 18, that "after a public drain has been constructed and any person has paid for connecting with it, it shall be constantly maintained and kept in repair by the town, so as to afford sufficient and suitable flow for all drainage entitled to pass through it. . . . . If such town does not so maintain and keep it in repair, any person entitled to drainage through it may have an action against the town for his damages thereby sustained." Is this statute broad enough to reach a case where the want of repair complained of consists, not in the condition of the structure of the public sewer itself at the time of the injury, but rather in the fact that the city authorities in the process of repairing the public sewer stopped up the pipe of one who has law-

fully connected with the sewer? We think it is. It would be a narrow construction indeed, and one not consonant with the wise purpose of the statute, to say that while the city must keep the main sewer open, it may, in doing so, destroy at the point of junction the connection with an abutter's pipe and thereby render the sewer itself of no use to him. That is not keeping it "so as to afford a sufficient and suitable flow for all drainage entitled to pass through it."

Therefore, if the Bates Street sewer was a public sewer which the defendant city was bound by law to maintain and keep in repair, it must be held responsible in this action.

The general authority for the construction of sewers is found in R. S., ch. 21, sect. 2, namely :—"The municipal officers of a town . . . . may at the expense of the town construct public drains or sewers along or across any public way therein." And in the exercise of this power it has been held that municipal officers constitute a special governmental tribunal for the exercise of a special governmental function, and that for their doings, their mistakes, their lack of good judgment in laying out and constructing a sewer, their town is not responsible. *Gilpatrick* v. *Biddeford*, 86 Maine, 534, and many other cases. But in some instances the power delegated ordinarily to municipal officers is delegated to some other tribunal. And in this case, we find, by the Private and Special Laws of 1864, ch. 398, as amended by Private and Special Laws of 1873, ch. 387, that in the case of the City of Lewiston,—"the city council of said city may lay out, make, maintain and repair all main drains and common sewers in said city." But the rule as to municipal non-liability is the same as under the general statute. *Keeley* v. *Portland*, 100 Maine, 260.

Since the city is not liable for the want of repair of any sewers except such as are legally laid out, it is incumbent on the plaintiff to show that the Bates Street sewer in question was legally laid out and constructed by the city council of Lewiston. If so, the duty of keeping in repair follows.

The records of the city, kept by the city clerk, show the following :

"In Board of Mayor and Aldermen, Mon. Eve., June 30, 1873.

"The following order was passed : —

''An order for building a sewer on Bates Street to Walnut Street, and on Franklin Street to Main Street sewer, was read, passed and sent down.''

"Tues. Eve., July 1, 1873.

"Board of Mayor and Aldermen.

"The order that the sewer on Bates Street be continued to Walnut Street, and that a sewer be built on Franklin Street from Pine Street to Main Street sewer, which passed the board of Aldermen, and was sent down June 30, and was referred to committee on sewers at the same meeting, came up, passed in concurrence."

To the sufficiency of this record, the defendant interposes several objections.    In the first place it says that "there is no evidence of the presentation of a petition signed as required by statute," and it cites the following language from the head note in *Kidson* v. *Bangor*, 99 Maine, 139 : — "The presentation to the board of municipal officers of a petition as required by statute is a jurisdictional fact which must be made to appear in order to show a proper and legal laying out of a sewer."    It is a sufficient answer to say that the special statutes, above cited, empowering the city council of Lewiston to lay out and construct sewers does not require any petition.    The city council can act of its own motion.

Again it is objected that there is no evidence of the making of an appropriation made for the purpose of the construction of the sewer. It is claimed that the making of such an appropriation is a preliminary jurisdictional matter, and that without it the laying out of a sewer is illegal.    In support of this proposition, the defendant cites, R. S., ch. 21, sect. 2, to the effect that the municipal officers shall not construct any public sewer until the same has been authorized by vote of the town, and an appropriation is made for the purpose.    But this statutory provision was not enacted until chapter 268 of the Laws of 1901, long after the Bates Street sewer was constructed.    The defendant also cites from the Revised Ordinances of the city to the effect that "the mayor and aldermen shall in no case proceed to construct a common sewer or main drain until an appropriation to defray the cost of the same shall have been made by the city council."    It does not appear that this ordinance was in force in 1873, but assuming that it was, and assuming that a compliance

with the ordinance was a jurisdictional requirement, it applied only to the construction of a sewer by the mayor and aldermen, and not to such construction by the city council.

Again, it is claimed that the city record is incomplete and indefinite in that it does not designate from what point on Bates Street the sewer was to be "continued," and hence, also, that it does not appear from the record that the sewer or part of a sewer thus ordered to be constructed is the sewer in front of the plaintiff's premises, and with which he is connected. It is true that the record unaided does not indicate the point on the face of the earth from which the sewer was to be continued. It is also true, as stated in *Kidson* v. *Bangor*, supra, that the record must show the full proceedings, and that the acts of the city council cannot be shown, and the record cannot be extended or modified, by parol evidence. We think, however, that parol evidence is admissible to locate on the face of the earth a point definitely stated in the record. Suppose the record had stated that the sewer was to begin at Oak Street, parol evidence would surely be admissible to show where Oak Street was. Suppose it had stated that the sewer was to begin at the south west corner of A's lot on Bates Street, surely it would be permissible to show by parol where on the face of the earth that corner was. This record shows that the sewer on Bates Street was to be "continued to Walnut Street." Continued from what point? Can it mean anything else than continued from the point where the then existing Bates Street sewer ended? We think not. The use of the word "continued" in that connection implied as clearly as if it had been written in words, that there was then a Bates Street sewer, which was to be continued from the point where it ended to Walnut Street. The record then stated a definite point on the face of the earth from which the sewer was to be extended. Where that point was could properly be shown by parol evidence. And it is shown by the testimony of the plaintiff in this case that the sewer mentioned in the record is the one now complained of.

Again, the defendant says that the record is not sufficient to show concurrent action by the two boards constituting the city council, that the record introduced is simply that of the mayor and alder-

men, and that there is no record evidence of the action of the common council. Of course record evidence of concurrent action by the two boards is necessary. The action of the common council could have been shown by its separate records, but we do not think that is indispensable. This record shows that the order was passed by the board of aldermen and "sent down," meaning of course, to the common council. It also shows that it " came up," that is, from the common council, "passed in concurrence," by the common council. The record is complete and sufficient if the city clerk was authorized to record officially that the order had been " passed in concurrence." We think he was. The city clerk was the recording officer of the mayor and aldermen, but he was more, he was the recording officer of the city government. The records of the city clerk show, or should show, the final action had by each branch of the city council. It is common knowledge that he makes his record of the action of the common council from official filings or memoranda "sent up" by the common council. These are "sent up" because he is the official custodian of all orders and resolves after they have been passed by the city council. We have no hesitation in saying that the city clerk's record in this case is admissible to show the concurrent action of the common council.

The defendant offers still another defense. Chapter 263 of the Private and Special Laws of 1903 provided for the establishment of a board of public works for the city of Lewiston which should " have and exercise all the powers and be charged with all the duties relative to the construction, maintenance, care and control of the streets, highways, bridges, dams and sewers in said city, which are now conferred or imposed upon the city council, municipal officers and commissioners of streets by the charter and ordinances of said city, and the general laws of the State." The board consists of seven members, one of whom is the mayor ex-officio, and the others are chosen by the city council annually, one each year, for the term of six years. The board is required to elect a superintendent of streets and sewers, who shall have executive charge of work under the direction and control of the board. The compensation of the superintendent is fixed by the board. The board

submits annually to the city council for its guidance in making appropriations a statement of work proposed to be done, with an estimate of its cost, and is required to give the city council such other information respecting its work as the council may require. It is forbidden to make expenditures in excess of the amount appropriated for its use by the city council.   It is required annually to make a full and detailed report to the city council of its receipts and expenditures and of work done.

The city now earnestly contends that by the creation of this board it has been relieved from all responsibility respecting sewers, and we add, for the purpose of showing the far reaching consequences of the proposition, that if this be so, it is also relieved from all responsibility for the want of repair of its roads and streets.   It is claimed that the State has created an independent administrative agency, to whose judgment and discretion are confided all matters relating to the maintenance and repair of sewers, that the city has no power to direct or control the work, or select the men who shall perform it, and hence it is claimed that the relation of principal and agent does not exist between the city and the board of public works.   From these premises it is argued that the city cannot be held responsible for the acts or omissions of an entirely independent body of men acting with exclusive powers under the provisions of a special statute.

It may readily be conceded that the relationship of principal and agent does not exist, but we think that does not decide the question. For it is competent for the legislature to regulate municipal administration in such way as it sees fit.   It may provide for municipal government by a commissioner, or a commission emanating from the people, or it may provide for government by a city council with legislative as well as administrative powers.   It may subdivide powers and duties, and assign a portion to one municipal agency and a portion to another, as for instance it may delegate the power of laying out and constructing sewers to one agency, the mayor and aldermen, and the maintenance and repair of them to another, the city council.   Or it may leave the administration of municipal affairs according to law to be regulated by the voters en masse in meeting assembled.

It is also competent for the legislature to create municipal responsibilities, and to declare that the people in their municipal corporate capacity shall be responsible to those who may be injured for the misconduct or lack of care or good judgment of any of the administrative agencies which it may create. It may make a town responsible for the want of repair of sewers, when it conducts its business by town meeting. So it may make a city responsible when it has a city council or other municipal agency. It might make it the duty of the aldermen alone, or of the common council alone, to make necessary repairs, and make the city responsible for their failure. As already stated, unless it is otherwise specially provided, the law makes the mayor and aldermen the board to lay out and construct sewers, and it might have made the city answerable in damages for their acts, to those injured thereby, but it has not. The statute, however, is positive that towns and cities shall be answerable in damages for injuries caused by the want of proper maintenance or repair of public sewers. There is no limitation of liability in the statute. They are liable whether, as towns, the people administer their affairs for themselves, or whether as cities, they elect a city council to act for them. And we are unable to perceive any valid reason why they should not be liable, when the care and maintenance of sewers are entrusted by law to a board elected by the city council, which is itself elected by the people.

As we have said, the law of liability is positive and universal. There is nothing in the act creating the board of public works which leads us to think that the legislature intended to relieve Lewiston from that law of liability. We hold that the city is not relieved. Though the municipal agency has been changed, the liability has not been.

The amount of the plaintiff's damages were agreed upon at nisi prius, and for that sum, with interest, the plaintiff is entitled to judgment.

*Judgment for plaintiff for $129.94 and interest*
*from the date of the writ.*