STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO. CV-99-573

SUSAN DUCHAINE, DANA H.
LAMPRON, JAMES E. SHAW, JR.,
THOMAS P. SHAW, DESIGN
DWELLINGS, INC., and SOLD, INC.,

                    Plaintiffs

          v.                                      DECISION AND ORDER

THE TOWN OF GORHAM,

                    Defendant


## FACTUAL BACKGROUND

Plaintiffs Susan Duchaine, Dana Lampron, James Shaw and Thomas Shaw (collectively referred to as the "Individual Plaintiffs") are the joint owners of Corporate Plaintiff SoLD, Inc., a Maine Subchapter S corporation engaged in land acquisition and development. Defendant's Statement of Material Facts ("DSMF") ¶ 1; Plaintiffs' Opposing Statement of Material Facts ("POSMF") ¶ 1. Duchaine is also the President, Treasurer and sole shareholder of Corporate Plaintiff Design Dwellings, Inc., a Maine Subchapter S corporation engaged in building and development. DSMF ¶ 2; POSMF ¶ 2.

On May 26, 1998, the Plaintiffs filed a notice of claim pursuant to the Maine Tort Claims Act, listing the alleged difficulties the Plaintiffs have experienced with Defendant Town of Gorham's Planning Department "[d]uring the past couple of years." DSMF ¶ 14. The Town of Gorham was insured under an insurance policy providing limited liability coverage by National Union Fire Insurance Company of Pittsburgh, Pennsylvania, during the relevant time period. Id. ¶ 46.

The Plaintiffs subsequently filed a nine-count complaint alleging denial of the right to equal protection (Count I), denial of the right to substantive due process (Count II), denial of the right to freedom of speech (Count III), denial of the right to petition for redress of grievances (Count IV), denial of procedural due process (Count V), negligence (Count VI), injurious falsehood (Count VII), defamation (Count VIII), and false light (Count IX). The injurious falsehood/slander of title claim is advanced only with regard to the Forest Estates subdivision project and concerns events that occurred in 1994. Id. ¶ 45.

Originally, the complaint alleged violations of the United States and Maine Constitutions. Id. ¶ 47. After the Town exercised its right to have the case removed to federal court, the Plaintiffs moved to amend the complaint to remove all federal claims and remand the case to state court. Id. All federal claims were subsequently dismissed with prejudice by the United States District Court for the District of Maine and the case was remanded. The Town now seeks summary judgment on the Plaintiffs' amended complaint. For the following reasons, the Town's motion is granted.

## DISCUSSION

I.    Standing

The concept of standing to sue means that the plaintiff has a sufficient personal stake in the controversy to obtain a judicial resolution of that controversy. Halfway House, Inc. v. City of Portland, 670 A.2d 1377, 1379 (Me. 1996). The Individual Plaintiffs may not assert the rights of their corporations, but must instead

2

demonstrate that they have received some particularized injury to have standing to raise the claims. See Stull v. First Am. Title Ins. Co., 2000 ME 21, ¶ 11, 745 A.2d 975, 979. The particularized injury requirement is met "when the defendant's actions have adversely and directly affected the plaintiff's property, pecuniary or personal rights." Id.

The Individual Plaintiffs argue that they have standing to assert the constitutional claims because they are owners of the Corporate Plaintiffs and made personal payments to the corporations which were then used to pay expenses such as the alleged excessive attorney's and engineering fees. The Individual Plaintiffs' positions as shareholders do not override the requirement that they sustain particularized injury. See Jones v. Niagara Frontier Trans. Authority, 836 F.2d 731, 736 (2d Cir. 1987) ("A shareholder--even the sole shareholder--does not have standing to assert claims alleging wrongs to the corporation."); Stull, 2000 ME 21, ¶ 11, 745 A.2d at 979 (holding that sole shareholder did not have standing to maintain a suit seeking recovery for the breach of an insurance contract between his corporation and defendant insurance company because the shareholder failed to demonstrate particularized injury). While the Individual Plaintiffs did make personal payments to the corporations, the Town's conduct did not directly affect their personal pecuniary interest as required to demonstrate a particularized injury. The Individual Plaintiffs therefore do not have standing to pursue the constitutional, negligence or slander of title claims.

The Town also argues that the Individual Plaintiffs lack standing to pursue

3

the defamation and false light claims because the evidence supporting the alleged damage to their reputations is conjecture and surmise. The Individual Plaintiffs have standing to assert those claims as damage to reputation is a particularized injury within the meaning of the term.

## II. Constitutional Claims

The Maine Civil Rights Act ("MCRA"), 5 M.R.S.A. §§ 4681-4685 (Pamph. 2000), is the sole vehicle by which a plaintiff may bring a claim alleging a violation of the Maine Constitution. Andrews v. Dep't of Env. Protection, 1998 ME 198, ¶ 23, 716 A.2d 212, 220. Pursuant to the MCRA:

> Whenever any person, whether or not acting under color of law, intentionally interferes or attempts to intentionally interfere *by physical force or violence against a person, damage or destruction of property or trespass on property* or by the threat [thereof] . . . with the exercise or enjoyment by any other person of rights secured by . . . the Constitution of Maine . . . , the person whose exercise or enjoyment of these rights has been interfered with, or attempted to be interfered with, may institute and prosecute in that person's own name and on that person's own behalf a civil action for legal or equitable relief.

5 M.R.S.A. § 4682 (emphasis added).

In Andrews, the plaintiff alleged a violation of his free speech rights and sought monetary, declaratory and injunctive relief pursuant to article I, section 4 of the Maine Constitution. Andrews, 1998 ME 198, ¶ 21, 716 A.2d at 220. The Law Court held that the plaintiff's failure to allege an interference with his rights by "physical force or violence, damage or destruction of property, trespass on property, or threats thereof" was fatal to his constitutional claim. Id. ¶ 23. Similar to the plaintiff in Andrews, the Plaintiffs' statement of material facts is completely devoid

4

of any facts that would establish this necessary predicate under the MCRA.

Relying on a sentence in Andrews that the Law Court was "declin[ing] to expand the available remedies for a violation of rights guaranteed by the Maine Constitution beyond those which the Legislature in its wisdom has provided," the Plaintiffs argue that the Law Court did not intend to construe the MCRA to be the exclusive remedy for all violations of the Maine Constitution. See id. The Law Court made this statement after noting that the plaintiff failed to establish the necessary predicate for a MCRA claim, however. Id. Taken in context, it is apparent the Law Court was rejecting the plaintiff's argument to expand the remedies available under the MCRA to allow a private cause of action for claims that have not alleged an interference by physical force or violence, damage or destruction of property, or trespass.

The Plaintiffs suggest that although the MCRA may be the exclusive means of obtaining monetary damages for state constitutional violations, it does not purport to foreclose injunctive, declaratory or any other non-monetary relief for such violations. In light of the holding in Andrews that the plaintiff could not maintain a private cause of action for monetary, declaratory or injunctive relief under the MCRA and the statute's requirement of a physical interference or threat of such an interference to sustain a "civil action for legal or equitable relief," the Plaintiffs argument is without merit. See 5 M.R.S.A. § 4682; Andrews, 1998 ME 198, ¶¶ 21-23, 716 A.2d at 220.

5

## III. Tort Claims

### A. Notice of Claim

To maintain any tort claims against a governmental entity, a plaintiff must file a notice of claim pursuant to 14 M.R.S.A. § 8107. Smith v. Voisine, 650 A.2d 1350, 1352 (Me. 1994). The notice provisions of the Maine Tort Claims Act ("MTCA"), 14 M.R.S.A. §§ 8101-8118 (1980 & Supp. 2000), require:

> Within 180 days after any claim or cause of action permitted by this chapter accrues, or at a later time within the limits of section 8110, when a claimant shows good cause why notice could not have reasonably been filed within the 180-day limit, a claimant or a claimant's personal representative or attorney shall file a written notice
> . . . .

Id. § 8107(1). A cause of action accrues for purposes of this 180-day period when the plaintiff suffers a judicially cognizable injury. Porter v. Philbrick-Gates, 2000 ME 35, ¶ 4 n.2, 745 A.2d 996, 998. Such an injury arises when "a wrongful act produces an injury for which the plaintiff is entitled to seek judicial vindication." McNicholas v. Bickford, 612 A.2d 866, 869 (Me. 1992) (citation omitted).

The Plaintiffs' only notice of claim was filed May 26, 1998. Only claims that accrued during the last week in November, 1997 through May 26, 1998 may therefore be addressed in this lawsuit.

The Plaintiffs argue that all of the Town's allegedly wrongful conduct is properly included in their claims because the alleged wrongful conduct is comprised of a series of events that ripened into tort claims within the 180-day window. The Plaintiffs therefore seek to reach back and include conduct that would otherwise be

6

barred.

A plaintiff may be excused from the timely filing of a notice of claim if good cause is shown. Smith, 650 A.2d at 1352. The Law Court has held good cause to exist in only two situations: when the plaintiff was "unable to file a claim or was meaningfully prevented from learning of the information forming the basis for his or her complaint." Beaucage v. City of Rockland, 2000 ME 184, ¶ 6, 760 A.2d 1054, 1056 (citation omitted). There is no evidence that the Plaintiffs were prevented from learning the information that forms the basis for their claims. To be able to reach back and include the claims accruing before November, 1997, the Plaintiffs must be able to show that they were unable to file a claim.

The Plaintiffs' argument that it was only in November, 1997 that they realized that their dealings with the Town amounted to tort claims does not rise to the level of good cause. Inability to file a claim does not include "ignorance of the existence of the claim." Martin v. City of Biddeford, 568 A.2d 1103, 1105 (Me. 1990). The Plaintiffs knew all of the facts comprising the alleged tort violations but failed to make a timely filing.

Only the alleged tortious conduct occurring within the 180-day window may therefore be addressed in this lawsuit. All claims accruing prior to November, 1997 are barred. Any claims accruing after May 26, 1998 are not part of this case.

### 1. Slander of Title

The Plaintiffs have failed to allege any slanderous statements disparaging the title of their properties that occurred within the 180-day window. See Colquhoun v.

7

Webber, 684 A.2d 405, 409 (Me. 1996) (holding that a slander of title claim requires publication of a false, slanderous statement disparaging claimant's title that was made with malice or in reckless disregard of its falsity and caused actual or special damages). The only allegation supporting the slander of title claim presented by the Plaintiffs is that the Town Planner filed a document in the Registry on August 2, 1994 that contained false statements concerning SoLD's Forest Estates project. DSMF ¶ 45; POSMF ¶ 67. A corrective document was subsequently filed in the Registry of Deeds on December 15, 1994. POSMF ¶ 67. Because this alleged tortious conduct did not occur within the 180-day window, the Defendant is entitled to summary judgment on the slander of title claim.

## 2. Defamation

The Plaintiffs' statement of material facts does not contain any allegation that the Town made a false statement about the Plaintiffs or that such statement was published to a third party within the 180-day window. See Cole v. Chandler, 2000 ME 104, ¶ 5, 752 A.2d 1189, 1193 (holding that defamation requires a false and defamatory statement, unprivileged publication to a third party, fault amounting to at least negligence, and actionability irrespective of special harm or the existence of special harm caused by the publication).

## 3. False Light

In Cole, the Law Court adopted the following definition of publicity that places a person in a false light:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other

8

for invasion of his privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Id. ¶ 17, 752 A.2d at 1197 (quoting RESTATEMENT (SECOND) OF TORTS § 652E (1977)). The term "publicity," as it is used in connection with a false light claim, means that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Id. (citation omitted).

Although the Plaintiffs refer generally to televised Planning Board proceedings and harmed reputations, no specific dates are attached to the references. See, e.g., POSMF ¶¶ 7-8, 29, 58-60. The Plaintiffs have therefore failed to raise an issue of fact that the Town gave publicity to any matter placing the Plaintiffs in a false light within the 180-day window.

## B. Immunity

The MTCA provides for governmental immunity from suit on "any and all tort claims seeking recovery of damages." 14 M.R.S.A. § 8103. Because immunity is the rule under this act, the statutory scheme has been described as an "exception-to-immunity" approach rather than an "exception-to-liability" approach. Young v. Greater Portland Transit District, 535 A.2d 417, 419 (Me. 1987). The statutory exceptions to immunity are inapplicable to this case. See 14 M.R.S.A. § 8104-A. The Town may have waived its immunity by procuring insurance covering areas in which it would otherwise be immune. See id. § 8116.

During all relevant times, the Town of Gorham had limited liability coverage from National Union Fire Insurance Company of Pittsburgh, Pennsylvania. The Town's insurance policy applies to "Wrongful Acts committed in, and suits brought against the insured in, the United States of America . . . . " Def.'s Ex. 1 at 6. "Wrongful Act" is defined as "any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty, including misfeasance, malfeasance and nonfeasance." Id. at 2. This definition clearly includes the Town's negligent acts. The Town has therefore waived its governmental immunity from suits seeking monetary damages for negligence.

The Town argues that even if it did waive immunity by procuring insurance, it is not liable for any torts because it was either undertaking a quasi-judicial act or was performing a discretionary function within the meaning of the MTCA. See 14 M.R.S.A. § 8104-B(2) & (3). The insurance coverage waiver provision "extends to *all* activities within the general immunity afforded by the Act." Moore v. City of Lewiston, 596 A.2d 612, 615 (Me. 1991) (emphasis added). This includes the immunity afforded by undertaking quasi-judicial acts or discretionary functions. See, e.g., Comfort v. Town of Pittsfield, 924 F. Supp. 1219, 1237-38 (D. Me. 1996) (determining that the town lacked insurance and therefore did not waive its discretionary function immunity); Rippett v. Bemis, 672 A.2d 82, 88 (Me. 1996) (holding that the sheriff, as a governmental official, waived his immunity to the extent he enjoyed protection of liability insurance for his discretionary functions).

C. Negligence

10

To recover for negligence, the Plaintiffs must prove that (1) the Town owed them a duty of care, (2) the Town breached that duty, and (3) the breach was the actual and legal cause of their injury. See Adams v. Buffalo Forge Co., 443 A.2d 932, 938 (Me. 1982). Whether the Town owes Plaintiffs a duty is a question of law. See Searles v. Trustees of St. Joseph's College, 1997 ME 128, ¶ 5, 695 A.2d 1206, 1209. Duty involves the question of whether the Town is under any obligation for the benefit of the Plaintiffs. See id.

The Plaintiffs cite Googin v. City of Lewiston, 103 Me. 119, 68 A. 694 (1907) to support their argument that the Town's Land Use Code created a duty of care to treat the Plaintiffs in an equal manner when rendering permit and enforcement decisions. In Googin, the Law Court held that the city of Lewiston was liable for breach of a duty of care because the city was charged by private and special law with the duty to maintain and care for sewers. Id. at 698. Unlike Googin, however, the Town is not charged with a duty of care to treat the Plaintiffs in a fair and equal manner by statute, ordinance or otherwise. A claim of unequal treatment is viable, if at all, as a constitutional claim.

The entry is

The Defendant's motion for summary judgment is GRANTED.

Dated at Portland, Maine this 15th day of June, 2001.

Robert E. Crowley
Justice, Superior Court

11

Date Filed __10-07-99__ ___CUMBERLAND___ Docket No. __CV 99-573__

County

Action ____CONSTITUTIONAL RIGHTS____

SUSAN DUCHAINE
DANA H. LAMPRON
JAMES E. SHAW JR                           TOWN OF GORHAM
THOMAS P. SHAW
DESIGN DWELLINGS, INC.
SOLD, INC.

vs.

| Plaintiff's Attorney  MICHAEL TRAISTER, ESQ. | Defendant's Attorney  LISA FITZGIBBON BENDETSO |
|---|---|
| JOHN C. BANNON  ESQ  773-5651 | AND  MARK FRANCO ESQs 774-2500 |
| PO BOX 9785 | PO BOX 4630 |
| PORTLAND ME 04104 | PORTLAND ME 04112 |
| | WILLIAM DALE ESQ (COCOUNSEL) |
| | PO BOX 4510 775-7271 |
| | PORTLAND ME 04112 |

Date of
Entry

1999