2000 ME 104

Curtis COLE

v.

Brenda CHANDLER.

Curtis Cole

v.

Pola Buckley and the Mead
Corporation.

Supreme Judicial Court of Maine.

Argued April 3, 2000.
Decided May 26, 2000.

Thomas S. Carey (orally), Joseph R. Saunders, Carey & Assoc., Rumford, for plaintiff.

Peter J. DeTroy (orally), Russell B. Pierce Jr., Norman, Hanson & DeTroy, LLC, Portland, for Pola Buckley.

John S. Whitman (orally), Richardson, Whitman, Large & Badger, P.C., Portland, for Brenda Chandler.

James R. Erwin (orally), Nathan V. Gemmiti, Pierce Atwood, Portland, for Mead Corp.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

WATHEN, C.J.

[¶ 1] Plaintiff, Curtis Cole, appeals from a judgment entered in the Superior Court (Oxford County, *Warren, J.*) granting defendants Brenda Chandler's and Pola Buckley's motions for summary judgment in Cole's actions for defamation, invasion of privacy, interference with advantageous economic relations, intentional infliction of emotional distress, and punitive damages. Cole also appeals from a judgment entered in the court (*Perkins, J.*) granting defendant Mead Corporation's motion for summary judgment in Cole's action for forced publication of libel and slander. Cole argues that the court erred in finding that Chandler and Buckley were immune under the exclusivity provision of the Workers' Compensation Act. Cole also argues that the court erred in finding that, even if we recognize forced publication as a theory of liability, defendant Mead Corporation was protected by either statutory or common law immunity. We affirm in part and vacate in part.

[¶ 2] The facts, viewed in the light most favorable to Cole as the nonprevailing party, may be summarized as follows: Cole was the controller of the Mead Corporation, Publishing Paper Division, Rumford, and the head of the financial department at the Rumford paper mill from April 1, 1997, until October 28, 1997, when his employment was terminated based on the following series of events. Chandler and Buckley were supervised by Cole. In mid-October, 1997, Chandler's husband reported to the human resources manager that Cole had told a sexually explicit joke to Chandler that upset her. The manager confirmed with Chandler that the remark had been made and then asked a representative of the human resources department to investigate. Without naming Cole, the investigator conducted interviews with the persons whom Cole directly supervised. Two of those individuals were Chandler and Buckley. When interviewed, Chandler reported the joke and the following incident: In September or October, 1997, when several persons were standing around discussing a seminar in Atlanta that they were to attend and the cost of the accommodations, Cole suggested that the attendees, both male and female, could share rooms if their spouses did not mind. Buckley reported the following incidents: (1) Cole yelled from his corner office to her "hey, Pola, why don't you come in here—we'll close the door and have some fun!"; (2) Cole asked Buckley to go for a drink after work; (3) Cole asked Buckley for a back rub; and (4) Cole told an inappropriate sexual joke. On October 24, 1997, after the interviews, the manager and the investigator interviewed Cole. During that meeting, the manager advised Cole that he was suspended pending further investigation. On October 28, 1997, at the conclusion of Mead's investigation, the manager informed Cole that his employment was terminated.

[¶ 3] Cole brought separate complaints against Chandler and Buckley alleging defamation; invasion of privacy by placing Cole in false light with Mead, other potential employers and the general public; interference with advantageous economic relations; intentional infliction of emotional distress; and punitive damages. The actions were consolidated, and Cole filed an amended complaint alleging an additional count of defamation against Buckley. The amended complaint also added Mead Corporation as a defendant alleging forced publication of libel and slander, that is, that Mead told him that his discharge from employment was for sexual harassment, that it should have known that Cole would be forced to reveal the reasons for his termination in a search for new employment, and that he was forced to republish the libelous and slanderous statements.

Buckley, Chandler, and Mead filed motions for summary judgment. The court granted Buckley's and Chandler's motions on the basis that they were immune from suit by virtue of the exclusivity and immunity provisions of the Workers' Compensation Act.[1] It granted Mead's motion on the basis that, even if Maine law recognizes defamation by compelled self-publication as a theory of liability, Mead was entitled to immunity by statute or common law. Cole appeals both judgments.

[¶ 4] " 'We review the entry of summary judgment for errors of law, viewing the evidence in the light most favorable to the party against whom the judgment was entered.' " *Prescott v. State Tax Assessor*, 1998 ME 250, ¶ 4, 721 A.2d 169, 171 (citation omitted). Summary judgment will be upheld if the evidence produced demonstrates that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. *See id.*

### I. Mead Corporation

[¶ 5] Cole's only claim against Mead is for "forced publication of libel and slander." The elements of defamation are as follows:

(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

(c) fault amounting at least to negligence on the part of the publisher; and

(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*See Lester v. Powers*, 596 A.2d 65, 69 (Me.1991) (citing RESTATEMENT (SECOND) OF TORTS § 558 (1977)). Cole does not allege that Mead communicated the reason for its termination of Cole to any third party and thus the allegedly defamatory statement

was not published by Mead. Rather, Cole argues that he himself was forced to publish or communicate the reasons for his termination to prospective employers and that this should satisfy the publication element of the tort of defamation. We need not reach the issue of compelled self-publication, however, because a claim of defamation also requires that the publication be unprivileged, *see id.*, and we find that Mead, in any event, was protected by a conditional privilege under common law.

[¶ 6] Whether Mead is entitled to the common law privilege is a question of law. *See Rippett v. Bemis*, 672 A.2d 82, 87 (Me.1996). "A conditional privilege against liability for defamation arises in settings where society has an interest in promoting free, but not absolutely unfettered, speech." *Lester v. Powers*, 596 A.2d 65, 69 (Me.1991) (citations omitted). It may arise "in any situation in which an important interest of the recipient of a defamatory statement will be advanced by frank communication." *Rippett v. Bemis*, 672 A.2d 82, 87 (Me.1996) (citing *Lester v. Powers*, 596 A.2d at 70). In *Lester*, we held that a former student was entitled to a conditional privilege against libel for her letter to a college, as part of a professor's tenure review process, stating her version of the professor's conduct during a particular class. *See Lester v. Powers*, 596 A.2d at 70. In *Gautschi v. Maisel*, 565 A.2d 1009 (Me.1989), we held that a faculty member enjoyed a conditional privilege against a claim of slander while serving on a tenure review committee and engaged in reviewing another employee's credentials to determine whether that employee should be granted permanent employment. *See id.* at 1011. Similarly, Mead was entitled to a conditional privilege in this case against a claim of slander brought by one of its employees arising out of the termi-

---

1. 39–A M.R.S.A. §§ 104 & 408 (Supp.1999) are often collectively referred to as the exclu- sivity and immunity provisions of the Act.

nation of his employment relationship with Mead.

 [¶ 7] Cole argues next that, even if Mead is entitled to à conditional privilege, he has raised a genuine issue of material fact whether Mead has abused its privilege. The common law conditional privilege applies unless the originator of the statement abused the privilege. *See Gautschi v. Maisel,* 565 A.2d 1009, 1011 (Me.1989). Whether the defendant abused his privilege is a question of fact. *See Rippett v. Bemis,* 672 A.2d 82, 87 (Me. 1996). Once it is determined that the defendant is entitled to the privilege, the burden shifts to the plaintiff "to come forward with evidence that could go to a jury that [the defendant] abused the privilege." *Gautschi,* 565 A.2d at 1011. Abuse includes making the statement outside normal channels or with malicious intent. *See id.* (citing *Saunders v. VanPelt,* 497 A.2d 1121, 1125 (Me.1985); *Greenya v. George Washington Univ.,* 512 F.2d 556, 563 (D.C.Cir.1975); RESTATEMENT (SECOND) OF TORTS § 599 cmt. a (1977)). For purposes of defamation claims, malice means when the originator of the statement "knows his statement to be false, recklessly disregards its truth or falsity, or acts with spite or ill will." *See Rippett v. Bemis,* 672 A.2d 82, 87 (Me.1996) (citing *Lester v. Powers,* 596 A.2d 65, 69 & n. 7 (Me.1991)); *see also Lester,* 596 A.2d at 69 & n. 7 ("actual malice" is a term of art which means "knowledge or disregard of falsity"). Reckless disregard for the truth can be proved by evidence that "establishes that the maker of a statement had 'a high degree of awareness of probable falsity or serious doubt as to the truth of the statement.'" *Rippett,* 672 A.2d at 87 (quoting *Onat v. Penobscot Bay Med. Ctr.,* 574 A.2d 872, 874 (Me.1990)).

 [¶ 8] Cole argues that Mead abused its discretion because Buckley's and Chandler's statements were false, because Buckley and Chandler did not follow proper company procedure for reporting a harassment claim, and because Mead did not thoroughly investigate the claim before terminating him. Cole, however, does not deny that, even if the additional investigation had been conducted, it would not have rebutted any of the allegations made by his subordinates. Further, he concedes that Chandler's statements that he told the joke and that he made a comment about sharing rooms if the spouses did not mind were true, and only argues that Chandler was not offended and that he did not believe the comment about sharing rooms had sexual overtones or referred to any specific individuals. Therefore, even if Cole raises an issue of fact as to whether Mead thoroughly investigated, he failed to show a reckless disregard for the truth. He did not establish a high degree of awareness of probable falsity or serious doubt as to the truth of the statement. *See Rippett v. Bemis,* 672 A.2d 82, 87 (Me.1996) (citation omitted); *see also* RESTATEMENT (SECOND) OF TORTS § 580B cmt. i (1977) (defamation of private person citing § 580A cmt. d for knowledge or reckless disregard of falsity); § 580A cmt. d (1977) (stating that "[r]eckless disregard is held not to be measured by whether a reasonable, prudent person would have published the statement without more investigation."); *Duffy v. Leading Edge Products, Inc.,* 44 F.3d 308, 315 (5th Cir. 1995) (noting that an inadequate investigation by itself was clearly not sufficient to show actual malice). Nor did he show spite or ill will. Even when the facts are viewed in the light most favorable to him, they do not present a genuine issue of material fact whether Mead abused the privilege. Therefore, we find that the court did not err in granting summary judgment in favor of Mead on the basis that Mead enjoyed a conditional privilege and did not abuse that privilege.

## II. Chandler and Buckley

### A. Exclusivity Provision of Workers' Compensation Act

 [¶ 9] As against Chandler and Buckley, Cole argues that, one, the exclu-

sivity provision of the Workers' Compensation Act was not intended to apply to injury to reputation because such a claim would not be compensable under the Act and, two, even if the exclusivity provision would otherwise apply, it does not apply in this case because Cole's injuries did not occur "in the course of" employment. Under Maine's Workers' Compensation Act, in order for an injury to be compensable, the employee must "1) suffer a personal injury, 2) that arises out of and 3) in the course of employment." *Knox v. Combined Ins. Co. of America,* 542 A.2d 363, 366 (Me.1988).[2] The exclusivity provision is found in 39–A M.R.S.A. § 104, and provides in pertinent part as follows:

> An employer who has secured the payment of compensation ... is exempt from civil actions, either at common law ..., involving personal injuries sustained by an employee arising out of and in the course of employment .... These exemptions from liability apply to all employees, supervisors, officers and directors of the employer for any personal injuries arising out of and in the course of employment ....

39–A M.R.S.A. § 104 (Supp.1999).

[¶ 10] Although this is a case of first impression, we are guided by our developing case law. We have consistently applied a broad and encompassing construction to the exclusivity provision. *See Beverage v. Cumberland Farms Northern, Inc.,* 502 A.2d 486, 489 (Me.1985); *Li v. C.N. Brown Co.,* 645 A.2d 606, 607 (Me.1994). In *Beverage* we stated the purpose of the Workers' Compensation Act as follows: "The 'legislative intendment in enacting the comprehensive scheme for worker's compensation' was to 'giv[e] effect to the underlying policy of providing certainty of remedy to the injured employee and absolute but limited and determinate liability for the employ-

er.'" *Id.* at 489 (citation omitted).[3] We further noted that "[i]f few occasions remain for employees to bring civil actions in tort against employers, such is merely the inevitable consequence of the legislature's extension of the coverage of workers' compensation." *Id.*

[¶ 11] We have refused to carve out an exception for intentional torts. *See Li v. C.N. Brown Co.,* 645 A.2d 606 (Me.1994). In *Li* the employee of defendant was killed when a former employee robbed the store and stabbed the employee; the employer allegedly knew of the intended armed robbery but did not close the store where the employee was working alone. *See id.* at 607. The plaintiff argued that the exclusivity and immunity provisions should not apply to injuries to employees caused by intentional torts. We found, however, that the Act applied "to all work-related injuries and deaths, however caused, not just accidental injuries and deaths." *Id.* at 608. We "decline[d] to create a judicial exception to the exclusivity and immunity provisions for employers' intentional torts," noting that if the Legislature intended to exclude intentional acts, it could have created the exception. *Id.*

[¶ 12] We also have not required that the excluded claims be compensable. *See Knox v. Combined Ins. Co. of America,* 542 A.2d 363 (Me.1988). In *Knox,* the plaintiff brought a civil action alleging assault and battery, intentional and negligent infliction of emotional distress, and negligent supervision of her supervisor by the employer. She sought compensatory and punitive damages, including mental injuries, caused by sexual assaults and harassments committed upon her by her supervisor. *See id.* at 364. We determined that, because injuries arising from assaults have been held compensable under the Workers' Compensation Act, no reason exists to distinguish between sexual assaults and

---

**2.** The applicable section in *Knox* was 39 M.R.S.A. § 51(1), which has been repealed and replaced by 39–A M.R.S.A. § 201 (Supp. 1999). P.L.1991, ch. 885, §§ A–7, A–8.

**3.** The applicable sections in *Beverage* were 39 M.R.S.A. §§ 4, 28, which have been repealed and replaced by 39–A M.R.S.A. §§ 104, 408 (Supp.1999). P.L.1991, ch. 885, §§ A–7, A–8.

non-sexual assaults for purposes of coverage under the Act. *See id.* at 365. We noted that under the right set of facts, mental or physical injuries from sexual assault could be compensable injuries under the Act. *See id.* We also noted that "[l]ikewise, injuries resulting from acts of sexual harassment are not excluded from the Act's coverage solely because of the sexual nature of the harassment." *Id.* at 365–66.

 [¶ 13] We do not rely on labels or the formal designation of a tort action to determine whether a claim is barred by the exclusivity provision of the Workers' Compensation Act. Rather, we look to the gist of the action and the nature of the damages sought to determine whether the claim for injury is excluded. *See* 6 ARTHUR LARSON, LARSON'S WORKERS' COMPENSATION LAW, § 104.05[1], at 18 (1999). The coverage and exclusivity provisions begin with a focus on personal injuries. Cole's claim for intentional infliction of emotional distress seeks a recovery only for mental injuries. As we have held in the past, mental injuries constitute personal injuries within the meaning of the exclusivity provision of the Workers' Compensation Act and thus an independent claim is barred. *See Knox v. Combined Ins. Co. of America,* 542 A.2d 363 (Me.1988). Cole's claims for defamation, invasion of privacy and interference with advantageous economic relations, however, are broad enough to include recovery for economic injuries, as well as mental or physical injuries. As with the claim for intentional infliction of emotional distress, any mental or physical injuries included within these claims are personal injuries and thus recovery is barred by the exclusivity provision. On the other hand, the economic or reputational injuries, if any, do not constitute personal injuries, as they are not physical or mental injuries. Therefore, the recovery of such damages is not precluded by the exclusivity provision.

 [¶ 14] Concerning those claims that constitute personal injuries under the Act, Cole argues that, even if the exclusivity provision applies in general, it would not apply in this case because the injuries did not occur "in the course of" employment. The purpose the coverage formula seeks to effectuate is " 'to compensate employees for injuries suffered *while* and *because* they were at work.' " *Comeau v. Maine Coastal Servs.,* 449 A.2d 362, 366 (Me.1982) (citations omitted). The determination turns on an issue of fact. *See Knox v. Combined Ins. Co. of America,* 542 A.2d 363, 366 (Me.1988). The question is whether the injury " 'occurs within the period of employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incidental thereto.' " *Hebert v. International Paper Co.,* 638 A.2d 1161, 1162 (Me.1994) (citations omitted); *see also Comeau v. Maine Coastal Servs.,* 449 A.2d 362, 367 (Me.1982).

[¶ 15] Cole argues that his injuries occurred at the time he was terminated while he was at home and compares himself to the defendant in *Hebert.* In *Hebert,* however, the plaintiff had been home for a month as a result of falling down stairs at the plant when his brother brought to his house a sign that allegedly had been posted at the mill questioning the sincerity of his fall and resultant back injury. *See id.* at 1161–62. It was the posting of the sign that caused him the emotional distress and not the injury at work. Therefore, we found that because he was at home at the time, it did not occur "in the course of" employment. *See id.* at 1162–63.

 [¶ 16] The evidence, viewed in the light most favorable to Cole, however, reveals that in this case the allegedly defamatory statements were made by Chandler and Buckley during the preliminary investigation of Cole for inappropriate behavior in the workplace while Cole was employed at Mead and while he was in his office performing his functions as controller and head of the financial department. As a

result of these interviews, the human resources person at Mead met with Cole in Cole's office, explained the concerns raised by the investigation, including the specific allegations, and placed Cole on suspension pending further investigation. After further investigation, while Cole was at home on suspension, Mead terminated Cole by phone. Thus, the alleged slander and the damage would necessarily have occurred at the place of employment while he was still in the performance of his duties before he was suspended. Therefore, his personal injuries, if any, arose out of and in the course of his employment and are precluded by the exclusivity provision of the Workers' Compensation Act.

### B. Remaining Claims

[¶ 17] Notwithstanding that Cole's claim for invasion of privacy is not precluded by the exclusivity provision to the extent of any economic damages incurred, it fails nonetheless. The claim is based on publicity which places the plaintiff in a false light in the public eye. *See Estate of Berthiaume v. Pratt*, 365 A.2d 792, 795 (Me.1976). Cole alleges in his complaint that Chandler's and Buckley's statements put him in a false light with Mead, other potential employers, and the general public. Liability for publicity placing a person in a false light is defined as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

RESTATEMENT (SECOND) OF TORTS § 652E (1977). Publicity is defined as follows:

> "Publicity," as it is used in this Section, differs from "publication," as that term

is used in § 577 in connection with liability for defamation. "Publication," in that sense, is a word of art, which includes any communication by the defendant to a third person. "Publicity," on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.

RESTATEMENT (SECOND) OF TORTS § 652D cmt. a (1977).

[¶ 18] Cole failed to generate any genuine issue through his statement of material facts that either Chandler or Buckley communicated their comments to the public or to so many persons that it would be certain to become public knowledge. Therefore, his claims for invasion of privacy against both Chandler and Buckley fail.

[¶ 19] Moreover, to the extent that the claims of defamation and interference with economic relations include economic injuries, Chandler is entitled to a conditional privilege similar to Mead Corporation. *See Gautschi v. Maisel*, 565 A.2d 1009 (Me.1989). Because Cole conceded that the statements made by Chandler were substantially true, he failed to demonstrate that Chandler acted with any malice and accordingly failed to demonstrate that she abused her privilege. As to Buckley, however, because Cole denied making the statements attributed to him, he produced evidence for purposes of summary judgment that she knew her statements to be false. Thus, we find for purposes of summary judgment that Cole raised a genuine issue of material fact that Buckley abused her conditional privilege. For the same reasons, we find that he raised a genuine issue of material fact for purposes of summary judgment as to his claims for defamation and interference with economic relations against Buckley to the extent that such claims seek recovery for injuries other than personal injuries.

The entry is:

Judgments in favor of Mead Corporation and Brenda Chandler affirmed; judgment in favor of Pola Buckley affirmed as to claims for intentional infliction of emotional distress, invasion of privacy and punitive damages and as to claims for defamation and interference with economic relations to the extent of any claims for personal injuries; judgment in favor of Buckley vacated as to claims for defamation and interference with economic relations to the extent of any claim for injuries other than personal injuries.